11138

GOBLE v. AMERICAN RAILWAY EXPRESS COMPANY

(115 S. E., 900)

1. CONSPIRACY—EVIDENCE INSUFFICIENT TO CONNECT EXPRESS COMPANY'S AGENTS WITH CONSPIRACY AGAINST PLAINTIFF.—In an action against an express company and its agents for conspiracy with detectives and police officers to degrade and humiliate plaintiff by wrongfully delivering a barrel of liquor to his house, and procuring a search and seizure under the prohibition law, evidence *held* insufficient to show any design by the express company's agents to do plaintiff an injury.

2. CONSPIRACY—EVIDENCE OF CIRCUMSTANCES CONSISTENT WITH A LAWFUL PURPOSE INSUFFICIENT.—Disconnected circumstances as consistent with a lawful purpose as with an unlawful undertaking are not sufficient to establish a conspiracy.

3. CONSPIRACY—EVIDENCE HELD INSUFFICIENT TO SHOW GUILTY KNOWLEDGE OF POLICE OFFICERS THAT EXPRESS AGENTS CONSPIRED TO FRAME

CASE AGAINST PLAINTIFF.—Evidence *held* insufficient to prove a conspiracy between agents of an express company who wrongfully delivered whiskey to plaintiff's home and city detectives, who promptly made a search and seizure, there being no showing that the city police officers had any knowledge of any design on the part of the express company agents to frame a case against the plaintiff or that such officers did not act honestly in the discharge of their duty to apprehend supposed law violator; the verdict of the jury for such police officers being conclusive as to their non-participation in the conspiracy.

4. CONSPIRACY—RECOVERY FOR TORT MAY BE HAD WHERE ALLEGATIONS OF CONSPIRACY FALL.—Where a plaintiff seeking recovery in an action for conspiracy fails to prove a conspiracy or concerted design, he may yet recover damages against one or more of the defendants proven to be guilty of the tort alleged to be the object of their conspiracy, and the allegations of conspiracy unsupported by evidence will be considered as mere surplusage, excepting, however, cases in which the act alleged as the object of the conspiracy if committed by an individual would not be actionable.

5. MALICIOUS PROSECUTION—EXPRESS COMPANY'S LIABILITY FOR ACT OF AGENTS IN PLANTING EVIDENCE ON PLAINTIFF'S PREMISES HELD FOR JURY.—Where the evidence failed to prove a conspiracy between express company agents and police officers to degrade and humiliate plaintiff by manufacturing a case against him for violation of liquor laws, yet evidence of the wrongful delivery by the express company of a barrel of whiskey to plaintiff's house after plaintiff had refused to accept the shipment, and ordered it not delivered, was sufficient to require submission to the jury, the conduct of the express company agents being within the scope of 'their employment, and the express company would be liable for damages resulting from their attempt to plant the evidence on plaintiff's premises.

6. MALICIOUS PROSECUTION—EXPRESS COMPANY HELD NOT LIABLE FOR ACTS OF DETECTIVE.—An express company is not liable for the acts of a special agent or detective in participating in the search and seizure of liquor in plaintiff's home and in malicious prosecution of plaintiff, where the company had wrongfully delivered the liquor against plaintiff's orders, as such agent's acts were not within the scope of his employment.

7. PRINCIPAL AND AGENT—PRINCIPAL NOT LIABLE FOR AGENT'S TORTS UNLESS ACTUALLY WITHIN SCOPE OF AGENCY.—A principal cannot be held liable for the tort of his agent unless the agent was at the time acting within the actual scope of his agency.

8. MASTER AND SERVANT—MASTER NOT LIABLE FOR SERVANT'S TORTS UNLESS WITHIN SCOPE OF EMPLOYMENT.—A master is not liable for the torts of his servant unless committed in the actual course and scope of his employment; the principal of estoppel not being applicable.

Before Wilson, J., Richland, October, 1920.

Reversed and remanded.

Action by D. H. Goble against American Railway Express Company. Judgment for plaintiff and defendant appeals.

*Messrs. Barron, McKay, Frierson & McCants,* for appellant, cite: *No evidence on which to base the verdict:* 107 S. C., 367; 103 S. C., 1. *Presumption of innocence in civil cases:* 34 L. R. A. (N. S.), 940; 46 L. R. A. (N. S.), 731; L. R. A., 1916D, 641. *Discretion as to motion for new trial:* 95 S. C., 471; 87 S. C., 152. *Shipment was an intestate one:* 214 U. S., 218; 206 U. S., 129. *And punitive damages improper:* 106 S. C., 155; 105 S. C., 287; 147 U. S., 101. *Distinction between liability of corporation for acts of agent and of servant:* 82 S. C., 317; 9 L. R. A. (N. S.), 931; Huffcut Agency (2d Ed.), 17.

*Messrs. Graydon & Graydon* and *Cole L. Blease,* for respondent, cite: *Exceptions too general:* 95 S. C., 385; 100 S. C., 43; 99 S. C., 200; 114 S. C., 332. *Charge correctly stated the liability of the principal for the acts of its agent:* 76 S. C., 211; 37 S. C., 377; 15 S. C., 5; 5 S. C., 75; 69 S. C., 413. *Affirmative defense:* 66 S. C., 135; 73 S. C., 503. *No review of refusal to grant new trial on after-discovered evidence:* 85 S. C., 229; 87 S. C., 152.

February 8, 1923.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

Action for $25,000 damages, based upon an alleged conspiracy by the defendants to manufacture a charge against

the plaintiff for storing liquor, to maliciously institute a prosecution therefor against him, for the purpose of de-grading and humiliating him, and of extorting from him money which they had no right to collect.

The defendant Express Company was and is a common carrier; the defendant Courtney was at the time of the alleged occurrence a special agent or detective of the Express Company; the defendant Strickland was the chief detective of the police department of the City of Columbia; the other four defendants, Shorter, Kelley, and the two Brooms, were privates of the detective force under the chief, Strickland.

The controversy has arisen out of the following transactions which the evidence tends to prove:

Early in April, 1920, the Express Company received at its Columbia office a certain package purporting to have been consigned by "George Odum" at West Palm Beach, Fla., to "Hon. Dan Goble, 1917 Assembly Street, Columbia, S. C." The package was a barrel billed as containing vegetables, and upon the shipment there were C. O. D. charges of $14.75 and express charges of $2.97. Delivery of the package was attempted by the Express Company at the address indicated, but, as no one could be found there by the name of "Goble," it was taken back to the express office and placed in a separate room,, devoted to the storage of "on hand" packages—that is packages as to which delivery had been attempted and failed. The express agent, ascertaining from the telephone directory that "D. H. Goble" lived at 1720 Assembly Street (and not 1917, as indicated) notified D. H. Goble, the plaintiff (whose first name is David, and not Daniel), by telephone that there was a package on hand at the office addressed to him, upon which the charges were as above stated, and asked him to call for it. The plaintiff was not informed by the agent what the barrel contained, and he had no knowledge of the character of the shipment, as he had ordered and was expecting nothing.

In response to the notice the plaintiff called at the office for the unknown and unexpected package, taking with him two $10.00 bills with which to pay the charges.   He there met the agent, Parks, in the main office, and was directed by him to the room where the "on hand" packages were stored. As the plaintiff entered this room he noticed a barrel standing near the counter upon which he saw the name "Goble," and the letters and figures, "C. O. D. $14.75."   Three men were standing about the barrel which had been opened; one of them was nailing the head back in; the other two ran behind other packages in the room, concealing themselves; the plaintiff did not recognize any of them, but supposed that they were United States revenue men.   He censured the man at the barrel for opening a package which belonged to some one else.   He asserts that his suspicions were aroused by the peculiar conduct of the men, and, being convinced that something crooked was being attempted, decided not to pay the charges and accept the shipment, as he had expected to do, and notified the agent not to deliver that package at his house.   He then left the express office and went to the Elks' Home, a club which he frequented, and while there he decided to take the additional precaution of telephoning to his home people not to receive the package if delivery should be attempted, but was informed that it had already been delivered and the charges collected from his wife, which was a fact.

Thereafter, the defendants, Courtney, Shorter, and Kelley, reported to Chief Strickland that a barrel of liquor had gone to the plaintiff's home.   Acting upon this information, the defendant, Strickland, went to the office of Recorder Kimball of the City of Columbia, and procured a search warrant to be issued by him.   The search warrant, at Strickland's suggestion, was signed by defendant, Courtney, the special agent or detective of the Express Company.   Thereupon, Strickland sent the defendants, Broom and Kelley, with another detective named Brown, to the plaintiff's res-

idence to prevent the removal of the barrel, and went out upon the street to find the plaintiff. He found him and told him that they wanted the barrel of liquor which was at his house. The plaintiff denied that he was responsible for its being there, and expressed his willingness for its removal. The plaintiff and Strickland then went together to the house, and located the barrel in the kitchen. Strickland and his associates, city detectives, took the barrel away. Instead of vegetables, it contained a large quantity of whiskey, in bottles, camouflaged at the top and bottom of the barrel with onions and other vegetables. The plaintiff was uncertain whether Courtney was a member of this raiding party or not; his complaint excludes him. The plaintiff was cited to appear before the Recorder upon a charge of storing liquor, and upon his trial the following day before the Recorder and a jury, was acquitted.

The defendant offered evidence tending to show that the barrel of liquor had been seized by the revenue agents of the United States, who had directed its delivery to them at the Palmetto Bank Building, but that, owing to the absence from the office of the express agent to whom those directions were given, another employee ignorant of the same, ordered its delivery at the plaintiff's house; that Courtney's connection with the issuing of the search warrant was at the suggestion of the chief detective, and that he was not in any wise at the time acting within the course of his employment as special agent of the Express Company.

At the close of the plaintiff's evidence as above summarized, the Express Company moved for a nonsuit upon the ground of an entire absence of evidence tending to establish the conspiracy alleged in the complaint. The motion was refused. At the close of all of the evidence the Express Company moved for a directed verdict in its favor upon the same ground. This motion was also refused. The Express Company requested the Circuit Judge to charge the jury that, where a servant, in the performance of a cer-

tain act, was not acting at all for the master, but for himself, or for another than his master, the master cannot be held liable for the act of the servant.   The Circuit Judge refused the request without the modification that if the act of the servant was within the apparent scope of his authority the master would be liable.   The jury found for all of the defendants except the Express Company and Courtney, their verdict being for $2,498.00 against the Express Company, and $2.00 against Courtney; and from the judgment entered upon the verdict against the Express Company it has appealed.

It is deemed unnecessary to consider any other questions raised by the exceptions than the following:

(1) Did the Circuit Judge err in refusing the motions of the Express Company for a nonsuit and for a directed verdict?

(2) Did the Circuit Judge err in refusing to instruct the jury as requested by the Express Company in its sixth request to charge, without the modification thereof given by him?

. As to the first question:

The sum and substance of the conspiracy, as alleged in the complaint, is that immediately after the plaintiff repudiated the shipment and forbade its delivery at his house the agents of the Express Company conceived the nefarious design of manufacturing a case of storing liquor against the plaintiff; that they proceeded to carry their purpose into effect by delivering the barrel at the plaintiff's home, despite his refusal to accept the shipment, and his directions not to deliver it; that the seizure and prosecution should be accompanied by notifying Courtney, the special agent of the Express Company, that they were going to make the delivery; that Courtney should inform the city detectives that the delivery had been made, and that the latter should make the seizure and institute the prosecution; all of which was carried out according to programme.   In

short, the gravamen of the charge is that the agents of the Express Company forced a delivery upon the palintiff of a consignment of liquor, so that an unfounded charge of storing liquor might be entered against him, and that the agents at the office, Courtney, the special agent, and the city detective force, were all in conspiracy to accomplish this purpose.

In order to make out such a *prima facie* case as would require the submission of the issue of conspiracy to the jury, it was incumbent upon the plaintiff to offer some evidence tending to show: (1) That the agents of the Express Company at the office had conceived such a design; (2) that they communicated this design to Courtney and notified him that the delivery was to be made; (3) that Courtney furthered the design by notifying the detectives of the delivery; and (4) that the seizure and prosecution were made and instituted in furtherance of the original design.

We have searched the evidence in vain for any evidence tending to show that the agents at the office had conceived any such design as is attributed to them by the plaintiff. It is assumed as true that the plaintiff declined to accept the shipment and forbade its delivery at his home. It is assumed as true also that notwithstanding this repudiation and direction not to deliver, the barrel was delivered and the charges collected. But we are unable to see how these facts constituted any evidence of the wicked design charged against these employees; and they are all that are offered by the plaintiff.

"Disconnected circumstances any one of which or all of which are just as consistent with a lawful purpose as with an unlawful undertaking are insufficent to establish a conspiracy." 12 C. J., 639.

There is an entire absence of evidence also, that, if the agents at the office had conceived such a design, they communicated such purpose to Courtney. The

plaintiff's attorneys recognized the importance of this connecting link in the alleged conspiracy by specifically alleging in the complaint:

"That immediately after plaintiff told the Express Company that he would not receive the barrel * '* * its agents and servants informed the defendant, Courtney, * * * that they intended to send said barrel to plaintiff's home."

It does not appear that there was any direct communication between the agents at the office and the city detectives who seized the liquor; there was evidence of a Communication between Courtney and the detectives; so that, in order to connect the Express Company, through its agents at the office, with the act of the detectives in seizing the liquor, it was essential, and so recognized, as has been seen, to establish a connection between the agents at the office and Courtney. Of this there is not a particle of evidence. But, assuming that the connection between the agents and Courtney was sufficiently established, it was equally essential, in order to establish a conspiracy between the Express Company, through its agents at the office and Courtney on the one side and the city detectives on the other, to present evidence of a guilty knowledge of and participation in the nefarious design by the city detectives. A hundred agents of a corporation might conspire among themselves to do an unlawful act, or to do a lawful act in an unlawful manner; but, while they would be guilty individually of conspiracy, and their act, the result of such a conspiracy, if accomplished within the course of their employment, would entail liability upon the corporation, it is impossible to conceive that a conspiracy between a corporation and its agents may be established by the act of such agents alone. The number of individual agents acting is of no consequence; the result would be the same in the case of a single agent; and it is incomprehensible that a single agent may, as the representative of his principal, conspire with himself

as an individual, so that he and the principal should be con-
victed of a conspiracy.

It was essential, therefore, to present some evidence that
the other party to the alleged conspiracy, the city detectives,
had guilty knowledge of the unlawful purpose and agreed
to participate in the corrupt confederation.   There is not
a particle of evidence tending to show that Strickland, the
chief city detective, had any knowledge of any design on the
part of any agent of the Express Company to manufacture
a case against the plaintiff, if in fact such design existed,
or that he did otherwise than act honestly in the discharge
of his duty, as an officer of the law, to apprehend a sup-
posed violator of the law.   The other defendants were act-
ing under his orders.   The verdict in their favor is con-
clusive of their non-participation.

It does not necessarily follow, however, that a fail-
ure on the part of the plaintiff to produce evidence
of a conspiracy entitles the defendant to a non-suit
or a directed verdict.

"As a general rule averment and proof that the acts were
done in pursuance of a conspiracy do not change the nature
of the action or add anything to its legal force and effect
If a plaintiff fails in the proof of a conspiracy or concerted
design, he may yet recover damages against one or· more
of the defendants shown to be guilty of the tort without
such agreement.   The charge of conspiracy when unsup-
ported by evidence will be considered mere surplusage not
necessary to be proved to support the action."   12 C. J.,
584.

"An obvious limitation on the rule stated in the foregoing
section is that it is of course essential to allege and prove
a conspiracy, where the act which is alleged as the basis of
liability is one which if committed by an individual would
impose no liability."  12 C. J., 585.

So that, the charge of conspiracy being eliminated, consideration must be directed to the acts of the agents at the office and the act of Courtney, disconnected with each other, with a view of determining whether either constituted the basis of liability against them individually and in their representative capacities.

It will be observed that the complaint does not seek to have the conduct of the agents at the office construed as a tort, disconnected from the conduct of Courtney. But, assuming that it was so intended, as would perhaps be justifiable under a liberal interpretation, we are of the opinion that, taking the testimony most favorably to the plaintiff, the evidence requires a submission of this question to the jury. From such an interpretation of the evidence it appears that the plaintiff refused to accept the shipment, and directed that it be not delivered at his house. In spite of this refusal and direction the agent of the Express Company delivered the package and collected the charges. Certainly to the extent of the charges the plaintiff had a valid cause of action against the defendant company. That such conduct was within the actual course of the agent's employment there can be no doubt. If it was done by the agents for the purpose of "planting" the barrel on the plaintiff's premises, so that it could be seized and he indicted for storing liquor, the Express Company would be liable for the resulting damages. If simply in disobedience of the plaintiff's instructions, with no idea of the consequent seizure and prosecution, such result could not be deemed the proximate result of the act of the agents.

The offense of Courtney is alleged to have been his knowledge of the delivery of the liquor at the plaintiff's home and his participation in the search and seizure and malicious prosecution. That Courtney's conduct, under his employment as special agent, was not within the course of his employment seems perfectly clear. The applicable principle has been so recently and clearly stated

in *Bushardt v. Insurance Company* (S. C.), 113 S. E., 637,
that further elaboration is unnecessary. Courtney's con-
duct is relevant only in connection with the alleged co-oper-
ation between him and the agents at the office, of which
there is no evidence.

As to the second question:

The appellant submitted the following request to charge:

"When a servant in the performance of a certain act was
not acting at all for the master, but for himself, or another
than his master, the master cannot be held liable for the act
of the servant."

The Circuit Judge refused to charge that request without
the modification which he gave to the jury that the master
might be held liable for the act of his servant if the servant
at the time was acting within the apparent scope of his au-
thority. To this modification of the request and the dec-
laration of the law, the defendant has duly excepted, and
presents this question for determination: Is a master liable
in damages for the torts committed by his servant, not only
when the servant was acting within the course of his em-
ployment, but within the apparent course of his employ-
ment? The relations of principal and agent and master
and servant are frequently confounded and treated as prac-
tically identical. They are both representative relations;
the principal and the master occupying a constituent posi-
tion, and the agent and servant a representative one. There
is this marked distinction between them: The agent is ap-
pointed for the purpose of establishing a new contractual
relation between the principal and a third person, out of
which may spring new obligations of the one to the other;
and, if the agent in creating these new obligations, by
agreements, representations, or promises, causes such third
person to alter his situation, the principal who has held
the agent out as authorized to so treat with a third person

will be estopped from denying the actual authority of the agent. Hence a principal is liable for the engagements, agreements, representations and promises of the agent made either within the actual or within the apparent scope of his authority.

An agent may commit a tort while engaged in the business delegated to him, within the scope of his agency, for which the principal will be liable in damages. Such an act involves no element of creating a new contractual relation between the principal and the third person, by which the representations of the agent would induce the third person to change his situation, and, thereby, upon the principle of estoppel, bind the principal. Hence a principal cannot be held liable in damages for the tort of his agent unless the agent was at the time acting within the actual scope of his agency.

Now the relation of master and servant is essentially different from that of principal and agent, in that the servant is deputized to complete, not a contractual relation between the master and a third person, as the agent is expected to do, but to perform an operative service for the master, in the performance of which, in the course of his employment, he may injure a third person. For such an injury the master must respond in damages under conditions similar to those under which the principal is liable for the torts of his agent—that is, where the act of the servant is committed in the actual course of his employment—for, there being no element of contract in the servant's service, nothing to induce the third person to alter his situation, there is no place for the application of estoppel which would prevent the master from disputing the authority of the servant.

"On general principles it would seem to be sufficiently clear that, except in cases where the conditions which rendered it possible for the servant in question to commit the tort complained of were brought about by some prior con-

tractual dealings between the servant and the injured party, the essential point to be determined must be the actual, not the apparent, scope of the servant's authority." 6 Labatt, Master and Servant, p. 6864; Huffcut, Agency (2d Ed.), § 148.

The judgment of this Court is that the judgment of the Circuit Court be reversed, and that the case be remanded to that Court for a new trial.

MR. CHIEF JUSTICE GARY and MESSRS. JUSTICES FRASER and MARION concur.

MR. JUSTICE WATTS dissents.