12598

GREEN v. SMITH *ET AL.*

(147 S. E., 333)

310

312

314

316

320

*Messrs. Benet, Shand & McGowan,* for appellants,

*Messrs. L. D. Jennings,* and *M. W. Seabrook,* for respondent,

February 20, 1929.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

I think the judgment in this case should be affirmed, and will state briefly my reasons therefor.

This is an action in tort for alleged injury to the plaintiff's business, reputation, and health.

For about seven years prior to July 1, 1921, the plaintiff was employed by the defendant Life & Casualty Insurance Company of Tennessee as agent to sell industrial life insurance, with headquarters at Sumter, and the employment seems to have been mutually satisfactory. In July, 1921, he resigned from this position and attempted, without success, to secure employment with the defendant Durham Life Insurance Company. He then procured a place as agent with the Libery Life Insurance Company of Greenville, and was assigned to work at Sumter, in practically the same territory which he had covered as agent for the Tennessee company. Several weeks later, a report having been made to the Tennessee company by the defendant W. D. Smith, its district superintendent at Sumter, that Green was making derogatory statements about the company and its business, the assistant secretary of the company entered complaint with the State Insurance Commissioner, who thereupon sent one of his deputies, E. C. Allen, to Sumter to make an investigation. Accompanied by Smith, the deputy visited and interviewed certain persons, whom Smith had previously seen, and procured affidavits, some of which had been previously prepared and were furnished him by Smith, stating that the plaintiff had said that the company was charging too much for its policies, was cheating poor, ignorant negroes, and was robbing its policyholders, and that he could not sleep at night on account of these matters. Allen forwarded these affidavits to the Commissioner, and told the plaintiff that his license as insurance agent would probably be revoked.

The plaintiff alleges that he was unable to obtain work from the Durham Company, because that company had agreed with the Tennessee Company not to employ him; that the statements contained in the affidavits were false, and were obtained for the express purpose of injuring him in his reputation and business and depriving him of his license; that these acts were done by the defendants willfully and maliciously; and that he was injured in his reputation, business, and health, and caused to spend time and money in defending himself before the State Insurance Commissioner in order to prevent his license from being revoked.

The case was tried in December, 1925, before Judge Townsend and a jury. At the trial Judge Townsend ordered a nonsuit as to the Durham Company, and, as there is no appeal from this order, that company passes out of the case.

The answer of the defendants Smith and the Tennessee Company alleges that, after the plaintiff had left the employment of the Tennessee Company and secured employment with the Liberty Company, they were advised by policyholders of the Tennessee Company that the plaintiff had made efforts to alienate policyholders of that company, and in so doing had made statements derogatory to the company and its policies and way of doing business; that they sought to get information with reference to these alleged statements of the plaintiff, and that, acting upon such information, they requested the State Insurance Department to make an official investigation of the matter, and in so doing acted in entire good faith and without malice towards the plaintiff, but in an effort to protect their own rights and good name; that the information, when gathered in the form of affidavits, was inspected and checked by an official of the State Insurance Department and turned over to that department for its own use and for no other purpose.

The defendants made a motion for a nonsuit and also for a directed verdict; the Court refused these motions and sub-

mitted the case to the jury who found for the plaintiff in the sum of $5,000. The Court also overruled a motion for a new trial. The defendants now appeal to this Court.

The questions raised by the first—except as to conspiracy —second, seventh, and eighth exceptions are satisfactorily disposed of by Judge Townsend's order refusing a new trial. This order will be reported.

Exception 3 and that part of Exception 1 relating to conspiracy cannot be sustained. While the complaint alleges facts which, if supported by testimony, would have constituted conspiracy, the trial Judge specifically told the jury that the plaintiff admitted that no conspiracy had been proved; and these remarks as to conspiracy were made for the purpose of explaining to the jury that, although the plaintiff had failed to show conspiracy, he might still recover against either or both of the defendants, if the evidence showed that such defendant or defendants had done him a malicious wrong without any concerted action—which is, of course, a correct proposition of law. *Goble v. Express Co.,* 124 S. C., 20, 115 S. E., 900. When the charge is taken as a whole, we find no prejudicial error.

Exceptions 4 and 5 impute error to the trial Judge in submitting to the jury the question whether the defendants had procured false affidavits to be made by either Celia Butler or Abe Butler. These affidavits are the crux of the case as developed at the trial. Celia's affidavit was to the effect that Green told her that the Tennessee Company was beating her out of $3 every week, and robbing the public; that while he was working for that company he tried to get the company not to charge people so much for insurance, but they did not listen to him, so he left them and went to an honest company. Abe's affidavit was to the effect that he had heard the affidavit of Celia, his wife, and that it was correct, he having heard the conversation between Green and his wife. The defendant's testimony is that Smith and Crawford, another agent of the Tennessee Company,

went to Celia's home and talked with her on August 22, 1921; that Crawford then and there, in Smith's presence, wrote out a statement which Celia then signed; that on August 25, 1921, Allen, with Smith and a notary public, went to see her, the signed statement was read to her, a sentence was added by the notary public, she swore to the statement with the addition, and the notary public added the necessary formalities to convert the writing into an affidavit. She admitted that she signed the paper, but denied that it was read over to her, and that she made the statements contained therein. Abe denied that he signed his alleged affidavit. I think the testimony clearly made the issue submitted to the jury in the charges complained of.

Exception 6 is without merit. Under the testimony already referred to, taken with other testimony in The case, including that of the defendant Smith, who admitted that he himself actually wrote out one of the affidavits placed in evidence, and that of the witness Taylor as tending to show Smith's attitude in connection with the procuring of affidavits, there was no error in the charge as objected to.

"On the whole," as said in *Leitner v. Railway Co.,* 145 S. C., 489, 143 S. E., 273, "the case was tried in accord with the principles of law applicable. The issues made by the controversy were mainly issues of fact, which were properly submitted to the jury as determinable by them alone under the evidence; and to set aside the verdict and direct judgment for the defendants would be, in my opinion, a usurpation by this Court of the jury's prerogatives."

This opinion, written as a dissent from the opinion of Mr. Justice Cothran, being concurred in by Justices Blease and Carter, becomes the judgment of this Court, which is that the judgment of the Circuit Court be affirmed.

MR. JUSTICE CARTER (concurring) : In concurring in the opinion of Mr. Justice Stabler, affirming the judgment of the Circuit Court, I desire to state that I am in full accord

with the well-deserved remarks make by the Circuit Judge with reference to the high character of witnesses for the defendants, especially with reference to Mr. Wood, who is a worthy member of the South Carolina bar, and for whom I entertain the greatest respect and hold in very high esteem; but the case involved is a law case, and this Court cannot reverse the judgment of the lower Court because, perchance, it attaches greater or less weight to the testimony of witnesses than given by the jury. According to my view of the case, there was conflicting testimony on the issues involved, as pointed out in the leading opinion, written by Mr. Justice Stabler, and it was, therefore, proper for his Honor, the presiding Judge, to submit the case to the jury.

MR. JUSTICE BLEASE concurs.

MR. JUSTICE COTHRAN (dissenting) : This is an action for $100,000 damages instituted by the plaintiff against the Life & Casualty Company of Tennessee, its superintendent W. D. Smith, and the Durham Life Insurance Company, resulting from an alleged conspiracy on the part of the defendants named, maliciously to injure the plaintiff in his profession and business as an insurance solicitor.

The case was tried before his Honor, Judge Townsend, and a jury. After hearing the evidence, his Honor directed a verdict in favor of the Durham Company upon the ground that the plaintiff had offered no evidence tending to establish the charge of conspiracy against that company. He also held that what the defendant Smith, superintendent of the Tennessee Company, had done, even within the actual scope of his agency, could not constitute a conspiracy on the part of him and the company he represented.

The charge of conspiracy was thus practically eliminated from the case, and the issue submitted to the jury was presented by the presiding Judge in the following very clear statement: "The plaintiff is asking for damages against the defendants on the ground that the defendant Smith was the agent of the defendant Life & Casualty Insurance Company

of Tennessee, and as such agent, and acting in the scope of his authority and agency, and for the purpose of injuring plaintiff in his business as an insurance agent, and to have revoked his license to act as an insurance agent in the same section of the State in which both plaintiff and said defendants were competitors, seeking to insure certain of the public, in order that defendants might put and keep plaintiff out of the insurance business, and take over his business for themselves, and in furtherance of the business of the Life & Casulty Insurance Company, began circulating among certain policyholders, whose policies had been theretofore written by plaintiff in the Life & Casualty Company, and maliciously induced some of such policyholders to sign affidavits, which the defendants knew were false, to the effect that plaintiff was making false statements to such policyholders, charging the Life & Casualty Insurance Company with robbing its policyholders, and stating that its rates were too high, and that its employees were dishonest, and that the plaintiff could not sleep at night for thinking about the policies he had sold for said Life & Casualty Insurance Company; and that all the statements in said affidavits concerning plaintiff were false, that defendants knew they were false, and maliciously obtained and used said false affidavits for the purpose aforesaid, and for the purpose of injuring the plaintiff in his business; and plaintiff further claims that defendants, by the malicious use of said false affidavits, has injured plaintiff by preventing him from obtaining employment as an insurance agent, and has caused him loss of time and labor in defending himself against such charges before the Insurance Commissioner; and has caused him physical injury and mental worry and anxiety connected therewith and growing out therefrom."

He more concretely, and very properly, charged the jury as follows: "Any malicious interference with the business or occupation of another, if it is the proximate cause of damage, is an actionable wrong. Such interference may be by

a single individual or corporation, or by a number of individuals or corporations conspiring together, but it is the injury or damage maliciously caused, which constitutes the gist of the action; and not the conspiracy, the latter being a matter of aggravation, if proven, as affecting the means and manner of redress. The claim of the plaintiff is based on a willful or wanton or malicious tort, and the plaintiff should not recover any damages unless has has proven by the greater weight of the evidence that he has been injured as alleged in the complaint by one or the other of said two defendants willfully or wantonly or maliciously procuring from Celia Butler or Abe Butler one or both of the affidavits purporting to be signed by each of them, which have been introduced in evidence and that he or it knew at the time he or it took such affidavit that the statement contained therein was false, and that the person signing such affidavit as affiant did not know the contents thereof and was not swearing to the statements therein contained as the truth; and by defendants maliciously using such false affidavit in a proceeding before the Insurance Commissioner for the purpose of procuring the revocation of plaintiff's license as an insurance agent."

The evidence tended to establish the following facts:

Prior to July 16, 1921, the plaintiff Green had been employed by the Tennessee Company, as its local agent in the City of Sumter, for seven years, and had given entire satisfaction to the company, as was shown by the very commendatory letters in evidence which he received from the company theretofore.

On that day he tendered his resignation for personal reasons, no breach of the friendly relations having occurred between him and the company.

The company's activities appear to have been limited to the colored population of Sumter, in the issuing of life, health, and accident policies. The premiums were collectible weekly, and the list of policyholders was put in the hands of

the agent to make collections; it has been referred to as the "debit line."

On July 26, 1921, 10 days after his resignation, the plaintiff secured employment with the Liberty Life Insurance Company of Greenville, S. C., a company engaged in the same line of insurance, in the same territory, City of Sumter; and his debit line was turned over to one Crawford, who took the plaintiff's place with the Tennessee Company.

The defendant, W. D. Smith, testified:

"Q. All right, after he went to work for the Liberty Life Insurance Co., on July 25th, and Mr. Crawford was put on his debit, state whether or not any reports came in to you about his debit? A. No, sir; the first week everything was all right.

"Q. What about the next week? A. Everything all right next week.

"Q. What about the next week? A. Everybody quit; I don't mean all, but the majority of them wouldn't pay the insurance.

"Q. Did you take steps to find out why? A. Yes, sir."

The defendant Smith then wrote to Dunkerley, secretary of the Tennessee Company, on August 24, 1921, as follows: "It is now Wednesday P. M. and we have not seen or heard anything from the Insurance Commissioner, and our company is still being knocked and abused by Mr. Green, an ex-agent of this company, and it is hurting us bad, our competitor agents are advising us that we had better act quick if we want to save any of our business, and also some of the older policyholders who Mr. Green could not influence have come to me and told me it is awful the way Mr. Green is doing and we ought to stop him if we can. I have done all I can, and Mr. Crawford is doing all he can, but this man Green had a terrible holt on the policyholders, at least fifty per cent. of this debit is dead and I don't believe there is a man living who can save it. If you have a road man with supernatural power you had better get him to Sumter. The

reason I don't believe there is a man living who can save it, is because he is taking advantage of the Endowment policies and telling the folk we are charging them too much for insurance, and while he was with this company he tried to get them to give the people a fair rate and they wouldn't do it so he quit and went to an honest company that would give them a fair rate, he hands out this dope in a smooth way and it knocks our business to pieces and we can't even get in the homes."

Upon receipt of that letter Dunkerley transmitted it to McMahan, Insurance Commissioner, stating: "And you will note by its contents that it is very essential that we get Mr. Allen into this district at the earliest possible moment." (Allen was one of the Commissioner's men.)

Dunkerley had previous to this time written to Mr. Mc-Mahan, as Commissioner, that it had been reported to him that Green was disturbing the policyholders of the Life & Casualty Insurance Company around Sumter, and asked an investigation through his office. This investigation was ordered by the Commissioner, and on August 22d he advised Mr. Dunkerley that he was sending E. C. Allen, the supervisor of industrial companies, to investigate the actions of Green at Sumter.

On August 25th, Mr. Allen, the investigator, reported at Sumter, and was taken around by Mr. Smith, the superintendent, and W. M. Crawford, who was in charge of Green's old debit. Smith and Crawford had some statements from certain policyholders, Celia Butler and Winnie Williams, which they turned over to Allen, and also told him of other policyholders who were complaining. Allen went to see those who had made statements as well as others, and then, at the suggestion of Allen, a notary public was procured so that any statements made could be put into the form of affidavits. The notary who was employed was Mr. L. E. Wood, then a practicing attorney in Sumter, in partnership with Senator John H. Clifton and now an attorney at Greer, S.

C. In company with Wood, Smith, and Crawford, Allen went to the homes of four witnesses whose affidavits form the basis for the charge in the case—Celia Butler, Abe Butler, Fanny Anderson, and Winnie Williams—and also later at the office of the company was present when the affidavit of Henry Brown was executed. According to the testimony, Allen or Wood, the notary, read over each of these affidavits to the several affiants, and Wood administered the oath as notary public.

The statement of Celia Butler had been written out and signed by her on August 22d, but it wa sreaffirmed by her in the presence of Allen and Wood, after being read to her by each of them, and in the presence of Wood she added the last line, "I told Mr. Green I had had dealings with the Life & Casaulty Company and they had treated me white and straight," which was inserted by Wood in his own hand-writing at the time the affidavit was sworn to by Celia Butler. The affidavit of Abe Butler was written out by L. E. Wood at the time it was sworn to, as was the affidavit of Fanny Anderson. The statement of Winnie Williams had been written out by W. M. Crawford, but it was read over and affirmed by Winnie Williams and sworn to in the presence of Mr. Wood on August 25, 1921. The affidavit of Henry Brown was written by a man named Rowland employed by the Life & Casualty Insurance Company, but in the presence of E. C. Allen, and sworn to by Brown before L. E. Wood all on the 25th of August.

None of these statements were reduced to affidavit form except at the suggestion and under the direct supervision of E. C. Allen, the inspector sent there for that purpose.

Allen then wrote a report, dated August 26, 1921, addressed to Mr. McMahan, the Insurance Commissioner, in which he transmitted the affidavits and stated that from his investigation he did not see anything for the Insurance Department to do but to revoke Green's license.

The Insurance Commissioner, on receipt of this report, wrote to Green advising him of its tenor. No hearing was had thereon, however, and no further action whatever taken by the Commissioner to cancel the license.

At the trial of the case the witnesses, Celia Butler and Abe Butler, were the only parties who had made affidavits who testified in person as to what had been put in such affidavits.

Celia Butler stated that she had told Mr. Smith prior to the visit of Mr. Allen that she would sign a paper for him, and that he brought a paper to her which she signed.

She admitted her signature to the affidavit, but denied that she had made the statements therein, and denied that the same was ever read to her. This is in direct contradiction of the testimony of E. C. Allen, the investigator, who testified it was read to her by him when he and Smith went there the morning of August 25th, and was later read to her in his presence by L. E. Wood, the notary public; and of L. E. Wood, who testified that not only did he read it to her, but that she added the last line which was inserted in his handwriting. Also this contradicts the statements of Smith and of Crawford.

The witness, Abe Butler, denied having signed the affidavit attributed to him and to be found at folio 976, stating that the only one he ever signed was at the Bradham house for Mr. Levey, the attorney for Green. This is in direct contradiction of the statement of L. E. Wood and of the other parties present.

It is significant that Green testified that he had something like 1,000 or 1,200 policyholders on the debit line of the Tennessee Company, and that he had visited "some few" in the interest of the Liberty Company; he could not remember whether he had sold 333 of them policies or not; nor could he remember whether he had visited half of them or not.

Affidavits were submitted to the Insurance Commissioner from Celia Butler, Abe Butler, Henry Brown, Fannie Ander-

son, Winnie Williams, to the effect that Green was indulging in unfair practices, "knocking" the Tennessee Company, and using his former association with the Tennessee Company to induce policyholders on his debit to change companies.

It is conceded that Green was violating a rule of the Insurance Department: "A collector employed by one industrial company from service for another shall not be put to work in the same territory where he had been working for the other industrial. At least six months' time should intervene before he is eligible to be put in the same territory for a new company."

Assuming that Smith procured the affidavits, and not Allen, the representative of the State Insurance Department, and that his Honor, the presiding Judge, properly charged the jury: "I charge you that the affidavits procured by the defendant Smith in this case for use before the Insurance Commissioner were qualifiedly privileged; and there can be no recovery on account of procuring and publishing said affidavits unless it was done maliciously; and I charge you that it is necessary for the plaintiff to prove by the greater weight of the evidence that said affidavits were actuated or procured by actual malice, and failing so to prove, your verdict must be for the defendants. Actual malice is defined to be: that condition of mind which prompts one to do a wrongful act intentionally without legal justification or excuse." We are of opinion that there is not a particle of evidence which tends to show that the action of the defendants was inspired by malice against the plaintiff; or that the representative of the company had the slightest suspicion of the alleged falsity of the affidavits.

The Circuit Judge, in his order refusing a new trial, has paid a deserved tribute to L. E. Wood, Esq., an attorney of the Greenville bar and a member of the House of Representatives from Greenville County.

The undisputed facts are: (1) The plaintiff admits that he used the debit which had been furnished to him by the Tennessee Company in soliciting insurance for the Liberty Company, and compared the cost of one with the other; he denies that he induced any one to drop their insurance with the Tennessee Company. (2) That after two weeks the debit list turned over to plaintiff's successor had unreasonably been reduced by withdrawals. (3) That the superintendent had been informed of Green's improper activity and reported it, as he should have done, to the home office. (4) That the home office very properly referred the matter to the Insurance Commissioner and requested him to investigate the complaint and report. (5) That the Commissioner sent Allen from his office to do so. (6) That Allen, in cooperation with the agents of the company, secured numerous affidavits of Green's pernicious activity, and recommended his suspension as an insurance agent. (7) The evidence tends to show no malice on the part of Smith or the company, but attention to the interests of the company, in a legal channel, based upon information supported by affidavits which he had right to assume were true in the absence of a suspicion to the contrary.

We think that the motion of the defendants for a directed verdict in their favor should have been granted.

The judgment of this Court should be that the judgment of the Circuit Court be reversed, and that the case be remanded to that Court for the entry of judgment in their favor under Rule 27.

MR. CHIEF JUSTICE WATTS concurs.