626 S.E.2d 884

Marion R. McMILLAN, M.D. and Blue Ridge Medical
Specialties, P.A., Respondents/Appellants,

v.

OCONEE MEMORIAL HOSPITAL,
INC., Appellant/Respondent,

and

Anesthesiology Consultants of the Upstate,
P.A., Respondent/Appellant.

No. 26103.

Supreme Court of South Carolina.

Heard May 17, 2005.
Decided Jan. 30, 2006.
Rehearing Denied March 8, 2006.

560

V. Clark Price, Carroll H. Roe, Jr., and Dana M. Lahey, all of Roe, Cassidy, Coates & Price, of Greenville, for Appellant/Respondent Oconee Memorial Hospital, Inc.

D. Randle Moody, of Roe, Cassidy, Coates & Price, of Greenville, for Respondent/Appellant Anesthesiology Consultants of the Upstate, P.A.

Raymond E. Lark, Jr., of Austin, Lewis & Rogers, of Columbia, for Respondent/Appellant Marion R. McMillan, M.D. and Blue Ridge Medical Specialties, P.A.

Stuart M. Andrews, Jr. and Merritt G. Abney, both of Nelson, Mullins, Riley & Scarborough, of Columbia, for Amicus Curiae South Carolina Hospital Association.

Chief Justice TOAL:

This case arose out of the events surrounding Oconee Memorial Hospital's (Oconee) decision to offer anesthesiology and internal medical services on an exclusive basis. A jury returned a verdict against Oconee. The trial court reduced the verdict pursuant to the charitable immunity statute. This appeal followed. After certifying this case for review pursuant to Rule 204(b), SCACR, we reverse the trial court's denial of Oconee's motion for judgment notwithstanding the verdict.

### FACTUAL / PROCEDURAL BACKGROUND

Oconee is a private eleemosynary (charitable) hospital. Dr. McMillan has been a member of the medical staff at Oconee for almost 13 years and specializes in anesthesiology and

internal medicine. Additionally, Dr. McMillan is the sole shareholder of Blue Ridge Medical Specialties, P.A. (collectively referred to as McMillan).

For several years prior to this litigation, McMillan performed anesthesiology services at Oconee alongside the doctors of Anesthesiology Consultants of the Upstate, P.A. (Upstate). But after McMillan formed his own practice group, the two became competitors. During this period, the anesthesiology services at the hospital operated on an open-staff basis, therefore, all physicians with the appropriate privileges were permitted to practice anesthesiology and pain management. The development of two competing practice groups at Oconee, however, was problematic. As a result, the board at Oconee decided to pursue exclusive contracts for its anesthesiology services.

Oconee sought proposals for the award of an exclusive agreement to provide staff and anesthesiology services. Both Upstate and McMillan submitted proposals providing four physicians and six staff nurses to perform services at Oconee. However, at the time of the proposal, only two of Upstate's anesthesiologists and four of the nurses were available to start immediately at Oconee. In contrast, all of McMillan's personnel were available to start immediately.

Prior to the board at Oconee awarding an exclusive contract, several communications about the new exclusive contract took place between board members and officers at Oconee. Eventually the board awarded the contract to Upstate. McMillan was informed that his privileges at Oconee would end before January of 2002.

As a result of the actions of Oconee and Upstate, McMillan filed suit alleging civil conspiracy, breach of contract, violations of the South Carolina Unfair Trade Practices Act, breach of fiduciary duty, tortious interference with existing contractual relations, tortious interference with prospective contractual relations, denial of due process, wrongful taking, and inverse condemnation. In addition, McMillan sought injunctive relief. The trial court granted summary judgment in favor of Oconee and Upstate as to the claims for breach of fiduciary duty, tortious interference with existing contractual relation, tortious interference with prospective contractual relations, deni-

al of due process, wrongful taking, and inverse condemnation. Further, the trial court granted Oconee and Upstate's directed verdict motions for the claims for breach of contract and violations of the South Carolina Unfair Trade Practices Act. The parties went to trial on the issues of injunctive relief and civil conspiracy. McMillan claimed that Oconee and Upstate conspired to oust him from his privileges at Oconee.

The jury returned a verdict in favor of McMillan for $1,275,000 against Oconee only. As a result, McMillan made a motion to conform the pleadings to the evidence to allege civil conspiracy against Oconee. Oconee filed post trial motions including a motion to reduce the verdict and a motion for judgment notwithstanding the verdict. The trial court granted the motion to reduce the verdict and the verdict was reduced to $300,000 pursuant to the charitable immunity statute. The trial court denied the motion for judgment notwithstanding the verdict. In addition, the trial court granted permanent injunctive relief in favor of McMillan allowing him to perform certain limited services at Oconee. However, the trial court granted Oconee's application for supersedeas of the injunctive relief pending appeal.

Both parties appealed. As a result, the following issues are before the Court for review:

I. Did the trial court err in denying Oconee's motions for directed verdict and judgment notwithstanding the verdict as to the civil conspiracy claims?

II. Did the trial court err in reducing the amount of the judgment?

III. Are the charitable immunity liability limits inapplicable to a claim for civil conspiracy, and as a result, is Oconee not entitled to the statutory protection therein?

IV. Do the statutory caps applicable to charitable organizations violate equal protection?

V. Did the trial court err in granting McMillan injunctive relief?

## LAW / ANALYSIS

## I. Post Trial Motions

Oconee argues that the trial court erred in denying its motion for judgment notwithstanding the verdict as to the civil conspiracy claim. We agree.

In ruling on motions for directed verdict and JNOV, the trial court is required to view the evidence and the inferences that reasonably can be drawn therefrom in the light most favorable to the party opposing the motions. *Strange v. South Carolina Dep't of Highways and Pub. Transp.*, 314 S.C. 427, 429–30, 445 S.E.2d 439, 440 (1994). The motions should be denied where either the evidence yields more than one inference or its inference is in doubt. *Id.* The trial court can only be reversed by this Court when there is no evidence to support the ruling below. *Id.*

An action for civil conspiracy is an action at law, and the trial court's findings will be upheld on appeal unless they are without evidentiary support. *Gynecology Clinic, Inc. v. Cloer*, 334 S.C. 555, 556, 514 S.E.2d 592, 592–93 (1999). A civil conspiracy is a combination of two or more persons joining for the purpose of injuring and causing special damage to the plaintiff. *Lawson v. S.C. Dept. of Corrections*, 340 S.C. 346, 352, 532 S.E.2d 259, 261 (2000). Civil conspiracy involves acts that are by their very nature covert and clandestine and usually not susceptible of proof by direct evidence. *Robertson v. First Union Nat'l Bank*, 350 S.C. 339, 349, 565 S.E.2d 309, 314 (Ct.App.2002). However, a civil conspiracy cannot exist when the alleged acts arise in the context of a principal-agent relationship because by virtue of the relationship such acts do not involve separate entities. *Perk v. Vector Resources Group, Ltd.*, 253 Va. 310, 485 S.E.2d 140, 144 (1997).

While this Court has not addressed the issue directly, this Court has held that agents for a corporation acting in the scope of their duties cannot conspire with the corporation absent the guilty knowledge of a third party. *Goble v. Am. Ry. Express Co., et. al.*, 124 S.C. 19, 26–27, 115 S.E. 900, 903 (1923). In support of our Court's prior opinion, we believe that it is well settled that a corporation cannot conspire with itself. *See* 16 Am.Jur.2d *Conspiracy* § 56 (2005) (stating that

a corporation cannot be a party to a conspiracy consisting of the corporation and the persons engaged in the management, direction, and control of the corporate affairs, where the individuals are acting only for the corporation and not for any personal purpose of their own).

 In the present case, the jury returned a verdict against Oconee for civil conspiracy. McMillan then made a motion to conform the pleadings to the evidence to allege an Oconee only conspiracy. As a result, McMillan has failed to allege or prove a conspiracy. A civil conspiracy cannot be found to exist when the acts alleged are those of employees or directors, in their official capacity, conspiring with the corporation. As a result, we hold that no conspiracy can exist if the conduct challenged is a single act by a single corporation acting exclusively through its own directors, officers, and employees, each acting within the scope of his employment.

Therefore, we reverse the denial of the motion for judgment notwithstanding the verdict.

## II. Reduction of the Judgment

McMillan argues that the trial court erred in reducing the judgment. Because we find that no conspiracy took place and a judgment against Oconee was improper, we do not address the issue of whether the judgment was properly reduced.

## III. Applicability of Charitable Immunity Provisions

McMillan argues that the charitable immunity provisions are inapplicable to a claim for civil conspiracy, and as a result, damages may not be capped. Because we hold that no civil conspiracy took place, the issue of the applicability of the charitable immunity statute is moot.

## IV. Constitutionality of Charitable Immunity Provisions

McMillan argues that the statutory caps for judgments against charitable organizations violate the equal protection clause of the Constitution. As a result of our holding that no civil conspiracy existed, we do not address this issue.

## V. Injunctive relief

Oconee argues that the trial court erred in granting McMillan injunctive relief. We agree. Because McMillan failed to prove a civil conspiracy, the trial judge erred in granting injunctive relief.

### CONCLUSION

Based on the above reasoning, we reverse the trial court. McMillan did not properly allege an action for civil conspiracy. As a result, the trial court erred in denying Oconee's motion for judgment notwithstanding the verdict.

MOORE, WALLER, BURNETT, and PLEICONES, JJ., concur.