THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Stephen Anvar, M.D., Appellant,
 
 
 

v.

 
 
 
 Greenville Hospital System, John R. Sanders, M.D., John Rowell, M.D., Tim Sullivan, M.D., Robin Kelley, M.D., Fleming Mattox, M.D.,
 
 
 

Appeal From Greenville County
 D. Garrison Hill, Circuit Court Judge

Unpublished Opinion No. 2007-UP-004
Heard December 4, 2006  Filed January 10, 2007

AFFIRMED

 
 
 
 L. Henry McKellar, Christian Stegmaier, and Suzanne C. Boulware, all of Columbia, for Appellant.
 Sally M. Purnell and Matthew P. Utecht, both of Greenville, for Respondents.
 
 
 

PER CURIAM:  In this civil conspiracy case, Dr. Stephen Anvar appeals the circuit courts grant of summary judgment to Greenville Hospital System (individually, Hospital) and its agents and employees, Dr. John R. Sanders, Dr. John Rowell, Dr. Tim Sullivan, Dr. Robin Kelley, and Dr. Fleming Mattox (these physicians and Hospital, collectively, are Respondents).  We affirm. 
FACTS
Because this appeal is from a grant of summary judgment to Respondents, we view the facts, as we must, in the light most favorable to Dr. Anvar.  See, e.g., Summer v. Carpenter, 328 S.C. 36, 42, 492 S.E.2d 55, 58 (1997) (In determining whether any triable issue of fact exists, the evidence and all inferences which can be reasonably drawn therefrom must be viewed in the light most favorable to the non-moving party.).
Dr. Anvar practices medicine as a radiologist and a neurointerventionalist.  During the time this case arose, he was employed by Greenville Radiology, a private group of radiologists.  Although Dr. Anvar was not employed by Hospital, he had privileges to perform radiological procedures at Hospital.  He is specially trained to perform a carotid angioplasty/stenting (CAS) procedure.  
On May 25, 2001, Dr. Sella Littlepage contacted Dr. Anvar and asked him to perform an emergency diagnostic angiogram on a patient at Hospital.[1]  Dr. Littlepage had already performed a carotid endarterectomy (CEA) on the patient, and Dr. Anvars angiogram thereafter revealed a ninety percent stenosis, or narrowing, of the patients carotid artery.  After reviewing several alternatives, Dr. Littlepage and Dr. Anvar concluded Dr. Anvar should perform a CAS procedure to attempt to remove the blockage and prevent a stroke.  
During the stenting procedure, Dr. Anvar remembered a conversation he previously had with his colleague, Dr. Lee Madeline, about the Angioguard, a device made by Cordis, a Johnson & Johnson Company, used to catch clots that break off during a CEA or CAS procedure and prevent them from traveling into the cerebral circulation.  Dr. Madeline was a partner of Dr. Anvars employed at Greenville Radiology as a neurointerventionalist.  Dr. Anvar sent a technician, Ralph Scott, to retrieve the device from an operating room, and Dr. Anvar used it on the patient.  The patient was thereafter returned to the surgical recovery area. 
Dr. Madeline, Dr. Sullivan, and other physicians were studying the Angioguard as part of a clinical trial program, called the SAPPHIRE[2] Trial, at Hospital.  Dr. Sullivan, a vascular surgeon employed by Hospital, was the principal investigator for the SAPPHIRE Trial at Hospital.  The Angioguard was labeled at the time of this incident as being suitable for investigational use only and was classified as a device of significant risk by the Federal Drug Administration (FDA).  As an investigational device, the Angioguard could be used only in a clinical setting as part of a trial, and regulations required a physician to obtain a patients informed consent before using it.  At the time he used the Angioguard on the patient, Dr. Anvar had not received the patients consent, had not seen the device used, and had never been trained to use it.  
Dr. Sullivan, upset over the unauthorized use of the Angioguard device, contacted Hospital administration.  Dr. Sanders, the vice president of Medical Staff Affairs at Hospital, investigated the incident.  Dr. Sanders was concerned because the Angioguard device was to be used only in the investigational study and because there were concerns raised about whether Dr. Anvar knew how to use the device.    
Dr. Sanders notified Dr. Kelley, chairperson of Hospitals Institutional Research Committee (IRC), the body charged with administering Hospitals clinical trials.  Dr. Kelley appointed an IRC subcommittee, chaired by Dr. Mattox, to conduct an inquiry.  At the same time, Dr. Sanders asked Dr. Rowell, president of Hospitals Medical Staff, to investigate Dr. Anvars conduct.  Dr. Rowell appointed an Ad Hoc Committee in conjunction with Hospitals Medical Executive Committee (MEC), of which Dr. Rowell was also president.  Hospitals IRC Policies and Procedures allow the IRC to report research misconduct to the medical staff, but the IRC has no jurisdiction to suspend a physicians ability to practice medicine at Hospital.  Hospitals Bylaws allow the MEC to conduct patient care quality and appropriateness reviews.  
The IRC ultimately decided Dr. Anvars participation in research at Hospital should be suspended for five years.  In a report dated July 19, 2001, the MEC recommended to Hospitals Board of Trustees that Dr. Anvar be placed on probation for twelve months and be given a letter of reprimand.  After considering the MECs recommendation, the Board of Trustees, by letter dated July 24, 2001, placed Dr. Anvar on probation for five years, required him to complete a bioethics course within one year, and issued a letter of reprimand.      
In May 2003, Dr. Anvar filed a complaint against Respondents, alleging a civil conspiracy and violation of due process.  Dr. Anvar asserted his suspension and probation were solely the result of Respondents combined intent to injure him because of a turf battle at Hospital between radiologists who were not Hospital employees, such as Dr. Anvar, and vascular surgeons who were employed by Hospital, such as Dr. Sullivan, over which medical procedure was going to be performed by which medical specialty.  
Respondents answered and later moved for summary judgment.  The circuit court initially denied the motion.  After Respondents filed a motion to alter or amend the order, the circuit court granted partial summary judgment in favor of Respondents on Dr. Anvars civil conspiracy claim.[3]  Specifically, the circuit court granted summary judgment because Dr. Anvar (1) alleged a conspiracy between Hospital and its agents and employees acting within the scope of their authority, but Hospital can act only through its agents and employees and a legal entity such as Hospital cannot conspire with itself under South Carolina law; (2) produced no evidence of a combination or agreement among Respondents with the intent to injure him; and (3) produced no evidence of special damages.  Dr. Anvar made a motion to alter or amend this order, and the circuit court modified its order to grant summary judgment to Respondents on the claim of civil conspiracy based on the lack of evidence of an agreement among Respondents to injure Dr. Anvar.  The circuit court deleted the other two grounds for granting summary judgment.  This appeal followed.       
STANDARD OF REVIEW
In reviewing the grant of a motion for summary judgment, an appellate court applies the same standard that governs the trial court under Rule 56(c), SCRCP.  Ferguson v. Charleston Lincoln Mercury, Inc., 349 S.C. 558, 564 S.E.2d 94 (2002).  Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Rule 56(c), SCRCP; see also Standard Fire Ins. Co. v. Marine Contracting & Towing Co., 301 S.C. 418, 421, 392 S.E.2d 460, 462 (1990).  In determining whether any triable issues of fact exist, the evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the party opposing summary judgment.  Summer v. Carpenter, 328 S.C. 36, 492 S.E.2d 55 (1997).
LAW/ANALYSIS
Dr. Anvar argues the circuit court erred in granting summary judgment to Respondents on his claim for civil conspiracy.  We disagree.
A civil conspiracy is a combination of two or more parties joined for the purpose of injuring the plaintiff, thereby causing the plaintiff special damages.  Angus v. Burroughs & Chapin Co., 368 S.C. 167, 170, 628 S.E.2d 261, 262 (2006).  In order to establish a civil conspiracy, the record must contain evidence, either direct or circumstantial, of the joint assent of two or more persons for the purpose of injuring the plaintiff.  Cowburn v. Leventis, 366 S.C. 20, 49, 619 S.E.2d 437, 453 (Ct. App. 2005); First Union Natl Bank v. Soden, 333 S.C. 554, 575, 511 S.E.2d 372, 383 (Ct. App. 1998).
Dr. Anvars civil conspiracy claim is based on his allegation that a competition existed between vascular surgeons who were employed by Hospital and radiologists who were not employed by Hospital over which specialty would perform certain procedures.  On appeal, Respondents contend the trial court did not err in granting summary judgment on the ground that Dr. Anvar had presented no evidence of an agreement among Respondents to injure him.  All the evidence shows, Respondents contend, is that Dr. Anvar was properly disciplined for using a medical device that was clearly marked for investigational use only and that this discipline applied only to his participation in clinical trials, not to his work as a radiologist at Hospital.  Respondents further argue, as an additional sustaining ground, that the circuit courts decision granting summary judgment should be affirmed because Dr. Anvar alleges a civil conspiracy between a corporation and its agents and employees all acting in the scope of their authority, and as a matter of law an entity cannot conspire with itself.
We address only the latter contention.
An appellate court may review a respondents additional reasons to affirm the judgment and, if convinced it is proper and fair to do so, rely on them or any other reason appearing in the record to affirm the lower courts judgment.  IOn, L.L.C. v. Town of Mt. Pleasant, 338 S.C. 406, 420, 526 S.E.2d 716, 723 (2000); see also Rule 220(c), SCACR (The appellate court may affirm any ruling, order, or judgment upon any ground(s) appearing in the Record on Appeal.).
In a case involving a physicians (an anesthesiologists) allegation of civil conspiracy against Oconee Memorial Hospital and a competing anesthesiology group, our supreme court recently stated that a civil conspiracy cannot exist when the alleged acts arise in the context of a principal-agent relationship because by virtue of the relationship such acts do not involve separate entities.  McMillan v. Oconee Meml Hosp., 367 S.C. 559, 564, 626 S.E.2d 884, 886-87 (2006).  The court in McMillan noted that it had previously held that agents for a corporation acting in the scope of their duties cannot conspire with the corporation absent the guilty knowledge of a third party.  Id. at 564, 626 S.E.2d at 887 (citing Goble v. Am. Ry. Express Co., 124 S.C. 19, 26-27, 115 S.E. 900, 903 (1923)).  The court stated:  [W]e believe that it is well settled that a corporation cannot conspire with itself.  Id.  
As is explained in American Jurisprudence, where agents and employees are acting in the course and scope of their authority for the benefit of the corporation and not for their own personal gain, it is not legally possible for there to be a civil conspiracy with the corporation:

 Since a corporate entity cannot conspire with itself a civil conspiracy is not legally possible where a corporation and its alleged coconspirators are not separate entities, but, rather, stand in either a principal-agent or employer-employee relationship with the corporation.  Thus, a corporation cannot conspire with its agent when the agent is acting within the scope of his or her authority and a corporation cannot be a party to a conspiracy consisting of the corporation and the persons engaged in the management, direction, and control of the corporate affairs, where the individuals are acting only for the corporation and not for any personal purpose of their own.

16 Am. Jur. 2d Conspiracy § 56 (1998) (footnotes omitted), cited with approval in McMillan v. Oconee Meml Hosp., 367 S.C. 559, 626 S.E.2d 884  (2006).
In the case now before us, Dr. Anvar challenges Hospitals decision to suspend him and place him on probation.  To support his position, Dr. Anvar challenges the actions of Respondents performed while acting within the scope of their authority at Hospital.  Hospital is a public corporation.  At the time this action arose, Respondents were all agents or employees of Hospital.  Dr. Sanders was vice president of Medical Staff Affairs; Dr. Rowell was an orthopedic surgeon and president of MEC at Hospital; Dr. Sullivan was a vascular surgeon and the principal investigator for the SAPPHIRE Trial; Dr. Kelley was a pediatric infectious disease specialist and president of the IRC at Hospital; and Dr. Mattox was a urogynecologist and a member of a subcommittee of the IRC at Hospital.    
There is no evidence in the record that the physicians in this case acted in any manner other than in their capacities as agents and employees for Hospital or that they acted other than on behalf of the corporation.  Although Dr. Anvar summarily alleges that Respondents generally received a benefit by means of more business, there is no evidence to support this assertion or to demonstrate that either Hospital or the physician Respondents received any personal benefit from Dr. Anvars disciplinary matter.  
A corporation can act only through its directors, officers, agents, and employees.  Thus, because the actions of Hospitals agents and employees were all performed while acting within the course and scope of their authority, Dr. Anvars claim is barred by the intracorporate conspiracy doctrine.  See McMillan, 367 S.C. at 564-65, 626 S.E.2d at 886-87 (holding a civil conspiracy cannot exist in the context of a principal-agent relationship where the individuals are all acting only for the corporation and not for any personal purpose of their own); see also Cameron v. Church, 253 F. Supp. 2d 611, 623 (S.D.N.Y. 2003) (stating [t]he intracorporate conspiracy doctrine provides that the officers, agents and employees of a single corporate or municipal entity, each acting within the scope of his or her employment, legally are incapable of conspiring together and holding the plaintiffs claim of a civil conspiracy was barred by the intracorporate conspiracy doctrine where the individual defendants were all acting within the scope of their employment for the County of Westchester and thus no actionable conspiracy existed as a matter of law); Perk v. Vector Res. Group, Ltd., 485 S.E.2d 140, 144 (Va. 1997) (holding where Perk alleged a principal-agent or an employer-employee relationship existed between the several defendants, the trial court properly sustained a demurrer on Perks claim of civil conspiracy because the defendants were not separate entities and an entity cannot conspire with itself (cited with approval in McMillan v. Oconee Meml Hosp., Inc., 367 S.C. 559, 626 S.E.2d 884 (2006)).  
Accordingly, the trial courts grant of summary judgment to Respondents on Dr. Anvars claim of civil conspiracy is, hereby,
AFFIRMED.
GOOLSBY, STILWELL, and SHORT, JJ., concur.

[1]  The record variously refers to the patient having an angiogram or an arteriogram.  
[2]  SAPPHIRE is an acronym for Stenting and Angioplasty with Protection in Patients at High Risk for Endarterectomy.  
[3]   The circuit court denied the motion for summary judgment as to the due process claim.