0926

ISLAND CAR WASH, INC., Appellant v. George F. NORRIS, III, and R. William Rhodes, Respondents.

(358 S. E. (2d) 150)

Court of Appeals

596

*Jack D. Simrill,* Hilton Head Island, *for appellant.*

*A. R. Grant Morehouse,* Hilton Head Island, *Ronald E. Boston* and *Laura Callaway Hart, Turner, Padget, Graham & Laney,* Columbia, and *A. Parker Barnes,* of *Barnes, Davis & Tupper,* Beaufort, *for respondents.*

· Heard Nov. 18, 1986.

Decided April 6, 1987.

GARDNER, Judge:

Island Car Wash, Inc., (I.C.W.) in this action alleged that George F. Norris, III, (Norris), a former manager of I.C.W., stood in a fiduciary relationship with I.C.W. and that Norris conspired with R. William Rhodes (Rhodes) to breach Norris's confidential relationship with I.C.W. and pursuant to

said conspiracy diverted funds of I.C.W. to their own pockets. The trial judge directed a verdict in favor of Norris and Rhodes. We reverse and remand.

We briefly review the facts in a light most favorable to I.C.W. Evidence of record reflects that Rhodes gave Norris two separate purchase orders for car wash equipment, one in the amount of $56,508 for used and rebuilt equipment and one in the amount of $105,432 for new equipment. I.C.W. purchased the used, rebuilt equipment for $56,650, but allegedly used the purchase order for new equipment when it applied for a loan from C & S Bank for land and equipment to commence the car wash business. The bank made periodic deposits to I.C.W.'s corporate account; checks written by Norris and his wife were mailed to Rhodes in payment of the car wash equipment.

The parents of Mrs. Norris, Norris's ex-wife, owned 90 percent of the stock of I.C.W. Norris and Mrs. Norris each owned 5 percent of the stock. Although Mrs. Norris was the secretary of the corporation, this title was only nominal; she had very little to do with starting up the business and was unfamiliar with I.C.W.'s financial dealings during the time of the events in question; she, however, at her husband's direction, wrote one of the checks payable to Rhodes in the amount of $20,000.

Rhodes was paid $17,000 more than the cost of the used equipment. Rhodes was also paid a consulting fee of $3,500. Norris testified that Rhodes brought $10,000 of the excess payment back to him in cash, evidently from Columbia. Norris admitted that none of the money was redeposited to I.C.W.'s account or in any way went back to I.C.W.; his excuse was that he had not received a salary from I.C.W. and took the money to compensate himself for that. Norris further testified that Rhodes purchased for him stock of American Premier for $7,000 and delivered him the certificates. Again Norris testified that he was entitled to the cash and stock to compensate him and for salaries which he allegedly had not been paid by I.C.W.

The trial judge interpreted the complaint as an action for fraud and deceit and then held that the necessary elements of a cause of action for fraud and deceit were not proved; he then granted a directed verdict against I.C.W.

The complaint clearly states a cause of action for civil conspiracy and we so hold.

The issues of merit on appeal are whether (1) the trial judge erred in the refusal to admit into evidence for purpose of publication to the jury certain documents which will later be identified and discussed and (2) the trial judge erred in the direction of the verdict.

A confidential or fiduciary relationship exists when one imposes a special confidence in another, so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one imposing the confidence.

Courts of equity have carefully refrained from defining the particular instances of fiduciary relationship in such a manner that other and perhaps new cases might be excluded and have refused to set any bounds to the circumstances out of which a fiduciary relationship may spring. 36A C.J.S. *Fiduciary* at 385 (1983).

Moreover, it is a well-settled equitable rule that anyone acting in a fiduciary relationship shall not be permitted to make use of that relationship to benefit his own personal interests. It is a doctrine repeatedly announced by the courts of this nation that courts of equity will scrutinize with the most zealous vigilance transactions between parties occupying confidential relations toward each other and particularly any transaction between the parties by which the dominant party secures any profit or advantage at the expense of the person under his influence. 36A C.J.S. *Fiduciary* at 388 (1983).

No authority is necessary for the proposition that whether there was a confidential or fiduciary relationship between Norris and I.C.W. is an equitable issue.

Where legal and equitable issues or rights are asserted in the same complaint, legal issues are for determination by the jury and equitable issues for the court. *Winter v. U. S. Fidelity and Guaranty Co.*, 240 S. C. 561, 126 S. E. (2d) 724 (1962). And the issues are distinguished and divided by the court in its exercise as a court of law and a court of equity. *Miller v. British America Assurance Co.*, 238 S. C. 94, 119 S. E. (2d) 527 (1961).

With the reference to the case in hand, the evidence is clear that the owners of I.C.W., mainly Mrs. Norris's father and mother and Mrs. Norris, at the time the wife of Mr. Norris, reposed special faith and confidence in Norris in the starting up of the car wash business. He was the general manager of the car wash corporation and was responsible for getting together whatever was necessary to establish the car wash operation; he handled all negotiations with Rhodes. We hold that Norris occupied a fiduciary relationship to I.C.W. and was the dominant party in the spending of the money of I.C.W. in the starting up of the business.

Having so held we address the issue of civil conspiracy and evidence relating thereto. The elements of a civil conspiracy are (1) a combination of two or more persons, (2) for the purpose of injuring the plaintiff, (3) and which causes the plaintiff special damage. *Lee v. Chesterfield General Hospital, Inc.*, 289 S. C. 6, 344 S. E. (2d) 379 (Ct. App. 1986).

I.C.W. produced many documents which taken together were sufficient evidence to have submitted to the jury the issue of conspiracy, and we so hold. Mr. Gail, the vice-president of the Hilton Head branch of the C & S Bank of South Carolina, testified that he did not close the loan to I.C.W.[1] but that he was subpoenaed to bring to court the bank records pertaining to the I.C.W. loan. During the course of examination, Mr. Gail testified that he was a vice-president and custodian of the records which he brought with him. These records contain a copy of the larger invoice of $105,432. With reference to this Mr. Gail testified:

> In the normal course of business, when somebody purchases an asset or a piece of equipment, we ask for an invoice or something to give us an idea of the cost of it. Uh, in this case, I have—I have an invoice—one invoice for consulting fees for thirty-five hundred dollars and one invoice for the equipment for a hundred and five thousand four hundred and thirty-two dollars, which would have been what the bank used to base their opinion on the cost of the equipment.

---

[1] The then vice-president of the Hilton Head branch, Mr. Chandler, closed the loan; he was later transferred to the Columbia office.

From the records that Mr. Gail brought with him there were numerous office memoranda showing the contract price of the equipment and the consulting costs to have amounted to $108,932.

Not only do these records come within the purview of Section 19-5-510, Code of Laws of South Carolina (1976), known as the Business Records Act, but they were well within the discretion of the trial judge to admit because the office memoranda were on the stationery of the bank and the larger invoice was consistent with evidence other than Mr. Gail's testimony. And we so hold. See *J.K.T. Company, Inc. v. Hardwick,* 274 S. C. 413, 265 S. E. (2d) 510 (1980).

The record discloses that sometime after Mr. Norris pocketed the $10,000 in cash and the stock which Rhodes admittedly turned over to him, Mr. and Mrs. Norris separated. Mrs. Norris found in a desk belonging to Mr. Norris an envelope which was torn. In the envelope was a torn copy of the smaller invoice and a note which read, "Pete: this is for your records—only. Call me and let's discuss this." Mrs. Norris also found copies of the larger invoice in the I.C.W. records. These invoices were offered in evidence.

Most of the aforementioned documents were identified but not admitted into evidence and published to the jury because the judge ruled they were irrelevant. We disagree.

Conspiracy may be inferred from the very nature of the acts done, the relationship of the parties, the interests of the alleged conspirators and other circumstances. *Nottingham v. Wrigley,* 221 Ga. 386, 144 S. E. (2d) 749 (1965). Civil conspiracy is an act which is by its very nature covert and clandestine and usually not susceptible of proof by direct evidence; concert of action, amounting to a conspiracy, may be shown by circumstantial as well as direct evidence. *Mixon v. Phoenix Landscaping Co.,* 136 Ga. App. 344, 221 S. E. (2d) 225 (1975); *see also* 15A C.J.S. *Conspiracy* Section 29 at 691 (1977).

And in order to establish a conspiracy, evidence, direct or circumstantial, must be produced from which a party may reasonably infer the joint assent of the minds of two or more parties to the prosecution of the unlawful enterprise. Proof showing *concert of action* in the commission of the unlawful acts, from which the natural or

reasonable inferences arise that the acts were in furtherance of the common design of the alleged conspirators, is sufficient; at least to establish a *prima facie* case of conspiracy. 15A C.J.S. *Conspiracy* Section 30 at 698-700 (1977).

Moreover, the field of admissibility of evidence is broadened in proof of conspiracy. *Hall v. Walters*, 226 S. C. 430, 85 S. E. (2d) 729 (1955). In general broad discretion and great latitude are permitted in the reception of evidence in conspiracy cases. The law permits great latitude in the admission of circumstantial evidence tending to establish a conspiracy and to connect those advising, encouraging, aiding, abetting and ratifying the overt acts committed for the purpose of carrying into effect the objects of a conspiracy; the jury should have before them and are entitled to consider every fact which has a bearing on and a tendency to prove the ultimate fact in issue. 15A C.J.S. *Conspiracy* Section 29 at 690, 693-94 (1977); *Coleman v. Stevens*, 124 S. C. 8, 117 S. E. 305 (1923).

And finally, where a plaintiff seeking recovery in an action for conspiracy fails to prove a conspiracy or concerted design, he may still recover damages against a defendant proven to be guilty of a tort alleged to be the object of the conspiracy; the allegations of the conspiracy are considered as mere surplusage. *Goble v. American Ry. Express Co.*, 124 S. C. 19, 115 S. E. 900 (1923).

Taken together, the aforementioned documents do constitute evidence of a conspiracy to breach the confidential relations of Norris to I.C.W. which resulted in the conversion of $17,000 of money belonging to I.C.W., and we so hold. We therefore hold that the trial judge erred in directing a verdict for Norris and Rhodes.

And we find no merit to Rhodes' contention that I.C.W.'s exceptions do not conform to the rules of appellate procedure; they substantially do, and we so hold. Exception 1, which relates to directing the verdict, asserts error in that there was sufficient admissible, credible evidence to raise a jury issue as to all essential elements of the appellate's cause of action for both fraud and deceit and conspiracy to establish the same by clear, cogent and convincing evidence. We hold that the words fraud and deceit encompass con-

structive fraud which is most frequently found in a breach of duty arising out of a fiduciary or confidential relationship. *See* 37 C.J.S. *Fraud* 2(c) 1 and 2 (1983).

On appeal, I.C.W. only briefly argues that the fraud was constructive fraud and that a false representation is not an element of constructive fraud. The thrust of I.C.W.'s argument is that there is circumstantial evidence of actual fraud although its argument encompasses constructive fraud. We, however, need not decide whether the evidence of record constitutes a cause of action for actual fraud and deceit because we hold that there is evidence of record that a jury issue was posed as to conspiracy to commit constructive fraud by violation of a fiduciary relationship. We do so because this court is concerned with the substance of an appeal, not technical differences in the issues raised by the exceptions. *Bartles v. Livingston*, 282 S. C. 448, 319 S. E. (2d) 707 (Ct. App. 1984).

We find no merit in the remaining issues raised by Rhodes and Norris.

For the reasons stated, the judgment below is reversed and the case remanded for a trial *de novo*.

Reversed and remanded.

SANDERS, C.J. and SHAW, J., concur.