1662

FOXFIRE VILLAGE, INC., Respondent-Appellant v. BLACK & VEATCH, INC., Appellant-Respondent.

(404 S.E. (2d) 912)

Court of Appeals

*James C. Rushton, III,* and *Mary Layton Wells,* of *The Hyman Law Firm,* Florence, and *Asst. Gen. Counsel Dennis R. Schapker,* of *Black & Veatch, Inc.,* Kansas City, Mo., *for appellant-respondent.*

*Henrietta U. Golding* and *Preston B. Haines, III,* of *Bellamy, Rutenberg, Copeland, Epps, Gravely & Bowers,* Myrtle Beach, *for respondent-appellant.*

Heard Jan. 21, 1991; Decided May 13, 1991.

Rehearing Denied June 19, 1991.

BELL, Judge:

This is an action for breach of contract for failure to provide agreed engineering services in connection with the construction of a water and sewer system for a mobile home subdivision. Foxfire Village, Inc., the owner and developer of the project, sued Black & Veatch, Inc., the consulting engineers, alleging breach of contract, breach of contract accompanied by a fraudulent act, fraud, negligent misrepresentation, and breach of fiduciary duty. Black & Veatch answered alleging, among other things, breach of contract, contributory negligence, and lack of damages. They also counterclaimed for the unpaid balance on the contract and for indemnification. The circuit court referred the matter to the master in equity to enter final judgment with direct appeal to the Supreme Court. The master entered judgment for Foxfire for breach of contract in the sum of $393,834.75. He incidentally found that Black & Veatch breached fiduciary duties to Foxfire. He dismissed the counterclaims. Black & Veatch appeals. Foxfire cross appeals on

its claims for breach of contract accompanied by a fraudulent act, fraud, and negligent misrepresentation. We affirm.

The master awarded damages for breach of contract.[1] Accordingly, the judgment is at law. In an action at law, the reviewing court must view the facts in the light most favorable to the party prevailing at trial. *South Carolina Federal Savings Bank v. Thornton-Crosby Development Co.,* __ S.C. __, __, 399 S.E. (2d) 8, 11 (Ct. App. 1990). If there is any evidence to support the judge's findings of fact we must affirm the judgment. *Id.*

In 1982, Foxfire undertook to develop a mobile home park in North Myrtle Beach, South Carolina. In August of that year, Foxfire requested Moore, Gardner and Associates (now Black & Veatch) to provide engineering services for the project. A contract was signed on October 6, 1982, with a written amendment executed on October 25, 1982. The contract, as amended, bound Black & Veatch to perform the following services, among others:

> (1) Prepare a final development plan for the entire project showing proposed streets, water and sewer lines, drainage, and existing utility locations.

> (2) Design proposed street and utility improvements and develop plans and specifications adequate in detail for construction of street alignments and grades, water distribution lines, gravity wastewater lines, master meter, grading plan and drainage, sewage pump station and force main.

> (3) Submit engineering plans for local and state approvals.

> (4) Expedite review by the South Carolina Department of Health and Environmental Control.

> (5) Serve as the owner's professional representative for the services covered by the contract and provide professional advice and consultation to the owner.

---

[1] Although the master concluded Black & Veatch breached fiduciary duties to Foxfire, his order stated, "[H]aving found that the Defendant breached its contract, this Court need go no further." He then relied on the breach of contract to hold Black & Veatch liable for Foxfire's damages. As the breach of contract provides an adequate ground for the judgment, we express no opinion on the existence of a fiduciary relationship between the parties.

(6) Provide all services in accordance with generally accepted professional practices.

Richard Delap was Black & Veatch's project engineer for the Foxfire development. In October, 1982, Delap began supervising preparation of plans and specifications for the project. He knew the rules and regulations of the Department of Health and Environmental Control and was familiar with its permitting process. He knew that before issuing any construction permits for wastewater and water systems, the Department required a licensed engineer to submit and certify plans and specifications for the project and to complete the Department's application form. He knew that Foxfire could not legally begin construction until the Department approved the plans and issued a permit for the project. He also knew Foxfire needed construction permits from the City of North Myrtle Beach and the South Carolina Coastal Council before it could build the project.

In January, 1983, Delap and officers of Foxfire attended a meeting of the North Myrtle Beach City Council at which the Council approved the project for a building permit, based on plans and specifications prepared and submitted by Delap. The record indicates, and the master found, that after this meeting Delap advised Foxfire officials they could begin construction on the project. Construction on the water and sewer systems began in late January, 1983. By August, 1983, all of Phase I of the project and part of Phase II were completed.

At the time construction began, Delap had not applied to the Department for permits to construct the water and sewer systems. He did not advise Foxfire of this fact. On May 23, 1983, after the project was well under construction, Delap sent a letter to the Department enclosing plans and specifications and an Application for Permit to Construct. He did not reveal that the project was already under construction.

The application was received on May 30, 1983. In response to the application, the Department sent two letters, dated June 6, 1983, and June 29, 1983, informing Delap that the plans and specifications needed to be modified, that he needed to submit additional designs for certain components of the systems, that additional information about the systems was needed, and that certain additional items needed to be re-

solved before the Department could issue the construction permit. Delap received but never responded to these letters.

Almost a year later, by a letter dated May 15, 1984, the Department again wrote Delap, stating it had received no response to its prior letter about the Foxfire project. It went on to state that unless Delap responded within 30 days, the project would be dead-filed. Delap received but did not respond to this letter. As a result of Delap's failure to respond, the application process was ended and the records were dead-filed.

In May, 1985, the Department learned the Foxfire project had been constructed without a permit and had been placed into operation without final inspection or approval by the Department. In October, it wrote Foxfire a letter (with a copy to Delap) stating that the project was in violation of state law and indicating that it would pursue an enforcement action unless Foxfire promptly took specified steps to resolve the matter. Upon receipt of this letter, Foxfire referred it to Delap, who stated the matter would be taken care of. Among other things, the letter required Foxfire to submit "as-built" plans of the project to the Department within 60 days. Delap did not prepare and submit the "as-built" drawings until May, 1986. With this submission, he also forwarded the original material and construction specifications for the project. By two further letters, dated June 4, 1986, Delap forwarded applications for a Permit to Construct the water and sewer systems and the sewage pump station and also certified to the Department that the project was built in accordance with the specifications and the "as-built" drawings.

After reviewing the new submission, the Department, on June 26, 1986, wrote a letter to Ellis Spake, an engineer with Black & Veatch, requiring numerous revisions in the plans, specifications, and design for the project before it could be permitted. Spake did not respond to this letter. On August 8, 1986, the Department sent a further letter to Delap listing several additional items that should be resolved in order to complete review of Foxfire's application. Delap did not respond to this letter.

Because Foxfire constructed the project without required state permits and approvals, the Department eventually fined it $2000.00 and directed it to undertake remedial construction to bring its systems into compliance with the law. There is ev-

idence of record that the total cost for remedial construction would be about $392,000.00.

In June, 1987, Black & Veatch submitted to the Department plans, specifications, a project summary, and an application for Permit to Construct for the remedial construction. The Department took no action on the application because Black & Veatch refused to sign the professional engineer's certification on the application form as required by law.

Based on evidence in the record, the court found as a fact that Foxfire would not have begun construction in January, 1983, had it known the project was not yet approved by the Department. The court also found, and the evidence shows, that Black & Veatch did not timely submit engineering plans to the Department for state approval; did not expedite review by the Department; did not provide necessary professional advice and consultation to Foxfire; and did not provide its services in accordance with generally accepted professional practice.

Although Black & Veatch raises eighty-eight exceptions to the decision of the master, its appeal reduces to two essential issues: (1) is there evidence that Black & Veatch breached the contract; and (2) does the record support the damages awarded.

## I.

The argument that Black & Veatch did not breach its contract need not detain us. The facts recited above and other evidence of record, including Delap's own admissions under oath, overwhelmingly establish Black & Veatch's repeated, flagrant failure to perform its obligations under the contract. No purpose would be served by a detailed analysis of each argument on the issue of liability, some of which are irrelevant, and all of which are manifestly without merit.[2]

## II.

Black & Veatch asserts that if it did breach the contract, the master erred in awarding Foxfire the cost of remediation as damages. Reduced to its essentials, the argument is twofold.

---

[2] We find it unnecessary to rule on Black & Veatch's challenge to several of the master's fact findings, since the judgment is affirmable without regard to the disputed findings.

## A.

First, Black & Veatch claims the Department would have approved the project without requiring remedial construction if Foxfire had built it according to the original design, specifications, and plans prepared by Delap. It also claims Foxfire deviated from Delap's development plan in building the water and sewer systems in such a manner as to make the project unpermittable. Based on these premises, Black & Veatch argues that the damages incurred for remediation were caused by Foxfire's acts, not by its own breach of contract.

While the proof at trial is in conflict on this issue, there is evidence to support the view that Black & Veatch's conduct, not Foxfire's, caused the project to be built in violation of the law. As noted above, Delap certified on June 4, 1986, that the project was built in accordance with the original specifications which he submitted to the Department on May 23, 1983, and resubmitted on May 21, 1986. The original plans and specifications which Delap furnished to Foxfire for construction were not, as Black & Veatch asserts, adequate to obtain the Department's approval, a fact established by the letters of June, 1983, detailing numerous defects and omissions which prevented the Department from issuing a construction permit. Delap never corrected these problems nor did he advise Foxfire of their existence. If Foxfire had known Delap failed to obtain the required permit from the Department, it would not have begun construction until approval had been obtained. Only after it finished the water and sewer systems did Foxfire learn it had done so without a permit, using plans the Department had refused to approve.

It is reasonable to infer that but for Black & Veatch's numerous breaches of contract the Department would have issued a construction permit to Foxfire and would have approved the project after final inspection of the construction.[3] Black & Veatch's insinuation that Foxfire would have devi-

---

[3] A letter dated November, 1986, from the environmental quality manager for DHEC states the as-built Foxfire water system received a satisfactory rating in the Department's sanitary survey.

ated from the terms of the permit, had one been issued, is speculation about something that never happened.[4]

## B.

Black & Veatch also argues that the amount of damages is not supported by the evidence. The testimony established that Foxfire would have to pay a $2000.00 fine for constructing the project without the Department's approval. To do the remedial work required by the Department, Foxfire would also have to pay engineering fees of $6000.00 to $9000.00, construction costs of $282,834.75, and hookup costs of $70,000.00 to $100,000.00.

The court's award of $393,834.75 was within the range of the evidence. There is no merit to Black & Veatch's assertion that it was reversible error for the judge to use the high end of the range of damages in calculating the award. *See Satcher v. Berry*, 299 S.C. 381, 385, 385 S.E. (2d) 41, 43 (Ct. App. 1989). Its further attack on the testimony concerning the cost of hookups goes to the weight of the evidence. On appeal we are concerned with the existence of evidence to support the damages, not with its weight. *Id.* at 382, 385 S.E. (2d) at 42. We find no error in the amount of damages awarded.

## III.

### A.

At the close of Foxfire's evidence, Black & Veatch moved for a nonsuit on the cause of action for fraud in the inducement. The master granted the motion. On cross appeal, Foxfire takes exception to this ruling. We affirm.

Fraud cannot be presumed; it must be proved by clear, cogent, and convincing evidence. *Giles v. Lanford & Gibson, Inc.*, 285 S.C. 285, 328 S.E. (2d) 916 (Ct. App. 1985). At best, Foxfire's evidence established that Black & Veatch made promises or statements as to future events which were later unfulfilled. Such evidence may establish a

---

[4] Black & Veatch's additional argument that it is not liable because it is protected under an indemnification clause in its contract with Foxfire is without merit. The clause provides Black & Veatch protection from liability arising out of the negligent acts or omissions of the owner or a third party hired by the owner to construct the designed system. The clause does not shield Black & Veatch from liability caused by its own breach of promise.

breach of promise; it is not evidence of fraud. *Darby v. Water-boggan of Myrtle Beach, Inc.*, 288 S.C. 579, 344 S.E. (2d) 153 (Ct. App. 1986); *Emerson v. Powell*, 283 S.C. 293, 321 S.E. (2d) 629 (Ct. App. 1984) (fraud must relate to a present or preexisting fact; it cannot be based on statements as to future events).

## B.

Foxfire also claims the master erred in dismissing its causes of action for negligent misrepresentation and breach of contract accompanied by a fraudulent act. We find no error.

The negligence claim is based on Delap's failure properly to advise Foxfire concerning the status of the permit from the Department of Health and Environmental Control. The duty to give such advice arose from Black & Veatch's contractual promise to provide professional advice and consultation to Foxfire. Apart from the contract, Black & Veatch owed no duty to advise Foxfire about matters relating to the project. As a matter of law, if the duty owed arises merely from agreement of the parties, breach of the duty does not create a cause of action for negligent conduct. *Brown v. South Carolina Insurance Co.*, 284 S.C. 47, 324 S.E. (2d) 641 (Ct. App. 1984), *cert. dismissed*, 290 S.C. 154, 343 S.E. (2d) 530 (1985). Where the cause of action is predicated on the alleged breach, or even negligent breach, of a contract between the parties, an action in tort will not lie. *Meddin v. Southern Railway-Carolina Division*, 218 S.C. 155, 62 S.E. (2d) 109 (1950).

In order to establish its claim for breach of contract accompanied by a fraudulent act, Foxfire had to prove (1) a breach of contract; (2) fraudulent intent related to the breach; and (3) a fraudulent act directly connected to the breach. *Floyd v. Country Squire Mobile Homes, Inc.*, 287 S.C. 51, 336 S.E. (2d) 502 (Ct. App. 1985). The fraudulent act is an act characterized by dishonesty in fact, unfair dealing, or unlawful appropriation of another's property by design. *Harper v. Ethridge*, 290 S.C. 112, 348 S.E. (2d) 374 (Ct. App. 1986).

To establish this cause of action, Foxfire relied primarily on Delap's failure to obtain construction permits before advising in January, 1983, that construction could begin. It also points to Delap's failure to inform Foxfire after construction began, that the construction was illegal because the required permits had not been issued.

The master seemingly concluded the evidence did not show fraudulent or dishonest intent in connection with these acts and omissions. The weight of the evidence is a matter for the finder of fact at trial, not for this Court on appeal. Satcher v. Berry, supra. Viewing the evidence on this issue in the light most favorable to Black & Veatch, the master's finding is not so arbitrary or lacking in evidentiary support as to constitute an error of law.

Additionally, we observe that no decision of this Court or the Supreme Court has held that either nonfeasance or a mere statement without more satisfies the requirement that the breach must be accompanied by a fraudulent act. On the facts of this case, we decline to extend the rule beyond the existing precedents.

Affirmed.

Sanders, C.J., and Gardner, J., concur.