565 S.E.2d 309

**Willie ROBERTSON, Raymond Brown and Richard Pinckney, individually, and d/b/a Hollywood Financial Enterprises, Inc., Appellants,**

**v.**

**FIRST UNION NATIONAL BANK, formerly known as First Union National Bank of South Carolina, and Atlantic Appraisals, Respondents,**

**v.**

United States of America by and through its agency, The Department of Treasury Internal Revenue Service, South Carolina Department of Revenue and Taxation and Charleston County Business License User Fees Department, Respondents.

No. 3491.

Court of Appeals of South Carolina.

Submitted April 8, 2002.

Decided May 13, 2002.

Rehearing Denied June 19, 2002.

340

342

Edward M. Brown, of Charleston, for appellant.

W. Andrew Gowder, Jr., of Pratt–Thomas, Pearce, Epting & Walker, of Charleston, for respondent First Union National Bank.

Stephen P. Groves, Sr., H. Michael Bowers and Stephen L. Brown, all of Young, Clement, Rivers & Tisdale, of Charleston, for respondent Atlantic Appraisals.

LaVerne H. Manning, of U.S. Attorney's Office, of Columbia, for respondent United States of America.

Joe S. Dusenbury, Jr., of SC Department of Revenue, of Columbia, for respondent SC Department of Revenue and Taxation.

Samuel W. Howell, IV, of Howell & Linkous, of Mt. Pleasant, for respondent Charleston County Business License User Fees Department.

HEARN, C.J.

Willie Robertson, Raymond Brown, and Richard Pinckney (Appellants) brought an action against First Union National Bank (Bank) and Atlantic Appraisals (Atlantic) claiming they were harmed by entering into a mortgage agreement secured by property with an over-estimated appraisal value and alleging various causes of action. Bank and Atlantic filed motions for summary judgment on all causes of action. The trial judge granted the motions. We affirm.

## FACTS

In 1993, Appellants entered into an agreement with Robert P. Chaplin, III, to purchase a piece of commercial property located in Hollywood, South Carolina. The parties agreed upon a purchase price of $200,000, and Appellants made no attempt to negotiate for a lower price.

After agreeing to purchase the property, Appellants approached Bank to obtain financing. Bank executed a commitment letter of intent to loan Appellants the purchase money "not to exceed $160,000.00 or 80% of the appraised value, whichever is less," to be secured by the real estate. Bank then requested that Atlantic prepare a written appraisal of the property. The appraisal showed the market value of the property in November 1993 was $200,000. Both Robertson and Brown testified they did not see the 1993 appraisal until 1998.

Appellants executed a note and mortgage in favor of Bank for the principal loan amount of $160,000.00. The mortgage provided that Appellants would be responsible for paying off the balance of the debt in five years. At the end of the mortgage period, a balloon payment was due and Bank again hired Atlantic to appraise the property.

G. Hammond Bamberg, III, performed the 1998 appraisal and testified that in 1993, "the building was in good condition and in the photographs it was all painted up and nice looking and really did look good and apparently it was a hundred percent occupied at the time." Bamberg testified that the Hollywood rental market had declined since 1993. Moreover, Bamberg noted that "paint was peeling off" the building, "shrubs were growing through the compressor," and the build-

ing "appeared to be about half vacant." Atlantic found the 1998 fair market value of the property was only $80,000. In Bamberg's opinion, the difference in the appraised values resulted from the "condition of the improvements" to the property and the lack of any documentation regarding the leases and the income for the property.

When the final $133,000 payment was due, Appellants defaulted, and Bank commenced foreclosure proceedings. However, before the property could be sold, Appellants filed a complaint against Bank alleging six causes of action for: (1) fraud, (2) civil conspiracy, (3) breach of implied covenant of good faith and fair dealing, (4) negligent misrepresentation, (5) breach of contract, and (6) violation of the South Carolina Unfair Trade Practices Act. Bank answered and counterclaimed for foreclosure. Appellants later amended their complaint to add Atlantic as a party defendant to the causes of action for civil conspiracy, negligent misrepresentation, and unfair trade practices.

Both Bank and Atlantic filed motions for summary judgment. At the summary judgment hearing, Appellants argued the discovery process was not yet complete. They also produced an unsigned "Appraisal Review" document dated July 26, 1999, prepared by Fred J. Attaway, Jr., as the opinion of an expert witness questioning the 1993 appraisal performed by Atlantic. Appellants requested the court to "keep the record open" so that they could provide the court with a copy of Attaway's statement. Respondents objected to the introduction of the document as being untimely presented. The trial judge excluded Attaway's Appraisal Review and granted summary judgment on all of Appellants' causes of action.

## STANDARD OF REVIEW

"Summary judgment is appropriate when it is clear there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Toomer v. Norfolk So. Ry. Co.*, 344 S.C. 486, 489, 544 S.E.2d 634, 635 (Ct.App. 2001); *see also* Rule 56(c) SCRCP. Summary judgment is not appropriate, however, where further inquiry into the facts of the case is desirable to clarify the application of the law. *Carolina Alliance for Fair Employment v. South Carolina*

*Dep't of Labor, Licensing & Regulation,* 337 S.C. 476, 484, 523 S.E.2d 795, 799 (Ct.App.1999). In determining whether any triable issue of fact exists as will preclude summary judgment, the evidence and all inferences reasonably drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Strother v. Lexington County Recreation Comm'n,* 332 S.C. 54, 61, 504 S.E.2d 117, 121 (1998). If triable issues exist, those issues must go to the jury. *Rothrock v. Copeland,* 305 S.C. 402, 405, 409 S.E.2d 366, 367 (1991).

## DISCUSSION

### I. Ongoing Discovery

Appellants first argue that summary judgment was premature because they did not have a chance to finish discovery. We disagree.

■ Appellants' original complaint against Bank was filed on January 25, 1999, and their amended complaint adding Atlantic as a defendant was filed more than a year later on May 23, 2000. Bank answered the original complaint in March 1999 and Atlantic answered the amended complaint in May 2000. However, before Atlantic was added as a party, Charles Middleton, owner of Atlantic, was deposed on December 21, 1999 and April 25, 2000. Atlantic did not file its motion for summary judgment until August 1, 2000.

Under these facts, Bank and Atlantic were clearly authorized under our rules of procedure to file their summary judgment motion. "A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, **at any time after the expiration of 30 days from the commencement of the action** ... move ... for a summary judgment in his favor upon all or any part thereof." Rule 56(a), SCRCP (emphasis added).

■ In this case, although Respondents' motions for summary judgment were filed less than three months after Atlantic was made a party, the motions were filed more than a year after Appellants initiated the action and more than eight months after Middleton's initial deposition. We agree with the trial court that any further depositions would not have assisted Appellants. Generally, it is not premature for the trial court to grant summary judgment after all relevant parties have been deposed because the litigants have had a full

and fair opportunity to develop the record in the case. *See George v. Empire Fire & Marine Ins. Co.,* 344 S.C. 582, 594, 545 S.E.2d 500, 506 (2001) (finding summary judgment was not premature because defendant "had a full and fair opportunity to develop the record on this issue, but failed to do so."); *see also Bayle v. South Carolina Dep't of Transp.,* 344 S.C. 115, 128–29, 542 S.E.2d 736, 742–43 (Ct.App.2001) (stating it was not error to grant summary judgment because no further discovery would have contributed to the resolution of the case).

Additionally, it appears that Appellants did not protect their interests regarding their notices to take the depositions of several bank employees. Although these notices were sent before Respondents' motions, Appellants did not request protection from the court. Rather, at the summary judgment hearing, Appellants only asked that the trial judge hold the record open so that they could supplement it with their purported expert's opinion. Moreover, the existence of these notices does not make the motions for summary judgment premature. *See Degenhart v. Knights of Columbus,* 309 S.C. 114, 118, 420 S.E.2d 495, 497 (1992) (finding that summary judgment was not premature when the Degenharts did not seek a continuance or ask the master-in-equity to hold his decision in abeyance pending the outcome of their motion to compel discovery). Thus, we find no abuse of discretion in the trial court's finding that discovery was complete for purposes of summary judgment. *See Bayle,* 344 S.C. at 128, 542 S.E.2d at 742 ("The rulings of a trial judge in matters involving discovery will not be disturbed on appeal absent a clear showing of an abuse of discretion.").

## II. Summary Judgment on each Cause of Action

Appellants next claim that the trial judge erred in granting Bank's and Atlantic's motion for summary judgment on each cause of action. We disagree.

### A. Fraud

Appellants claim Bank and Atlantic committed fraud by pre-determining the amount of the appraisal based on the amount Bank wanted to loan.

To establish fraud, a party must prove: (1) a representation; (2) its falsity; (3) its materiality; (4) either knowledge

of its falsity or reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury.

*Sorin Equip. Co. v. The Firm, Inc.*, 323 S.C. 359, 365–366, 474 S.E.2d 819, 823 (Ct.App.1996). Failure to prove any element of fraud is fatal to the action. *Id.* Furthermore, "[f]raud cannot be presumed; it must be proved by clear, cogent, and convincing evidence." *Foxfire Village, Inc. v. Black & Veatch, Inc.*, 304 S.C. 366, 374, 404 S.E.2d 912, 917 (Ct.App.1991).

Here, it is clear that Appellants have not established the requisite elements for fraud. Appellants' lack of reliance is glaringly absent. The purchase price for the commercial property was already agreed upon before Appellants approached Bank for a loan. Significantly, Appellants did not receive a copy of the 1993 appraisal until 1998. Even if they had received a copy of this appraisal, both Robertson and Brown testified that they did not actually rely on it in purchasing the property. Therefore, Appellants could not have relied upon the appraisal in purchasing the property. Moreover, "[t]here [can] be no liability for casual statements, representations as to matters of law, or matters which plaintiff could ascertain on his own in the exercise of due diligence." *West v. Gladney*, 341 S.C. 127, 134, 533 S.E.2d 334, 337 (Ct.App.2000) (citations and internal quotations omitted). Here, the price for the property was not negotiated and Appellants made no effort to independently ascertain its value before purchase. Because Appellants accepted the seller's representation of the value of the property without question or confirmation and have not presented any evidence that the property was not worth $200,000 at the time of the 1993 appraisal, we find no evidence of fraud.

### B. Civil Conspiracy

Appellants claim Bank and Atlantic conspired with each other for the purpose of having them buy the property at an inflated value. We disagree.

A civil conspiracy exists when there is (1) a combination of two or more persons, (2) for the purpose of injuring the plaintiff, (3) which causes the plaintiff special damage. *Island*

*Car Wash, Inc. v. Norris,* 292 S.C. 595, 600, 358 S.E.2d 150, 152 (Ct.App.1987). "Civil conspiracy is an act which is by its very nature covert and clandestine and usually not susceptible of proof by direct evidence. . . ." *Id.,* 292 S.C. at 601, 358 S.E.2d at 153. Thus, "[i]n order to establish a conspiracy, evidence, either direct or circumstantial, must be produced from which a party may reasonably infer the joint assent of the minds of two or more parties to the prosecution of the unlawful enterprise." *First Union Nat'l Bank of South Carolina v. Soden,* 333 S.C. 554, 575, 511 S.E.2d 372, 383 (Ct.App. 1998).

 Here, Atlantic was employed by Bank and acting as the agent of only Bank. Bank retained Atlantic merely to appraise the property in 1993 and 1998. Significantly, Atlantic's appraiser testified that he was never told why the property was being appraised in the first place. Similarly, a loan officer at Bank testified that it was Bank's practice to appraise properties when new or re-financed loans were contemplated. Thus, because Appellants' have not presented any evidence of a concerted effort by Bank and Atlantic to harm Appellants, we find no proof of civil conspiracy.

C. Negligent Misrepresentation

 Appellants next assert they were the victims of a negligent misrepresentation resulting from the 1993 appraisal. In a claim for negligent misrepresentation, a plaintiff must prove that:

(1) the defendant made a false representation to the plaintiff; (2) the defendant had a pecuniary interest in making the statement; (3) the defendant owed a duty of care to see that he communicated truthful information to the plaintiff; (4) the defendant breached that duty by failing to exercise due care; (5) the plaintiff justifiably relied on the representation; and (6) the plaintiff suffered a pecuniary loss as the proximate result of his reliance upon the representation.

*deBondt v. Carlton Motorcars, Inc.,* 342 S.C. 254, 266–67, 536 S.E.2d 399, 405 (Ct.App.2000) (citation omitted). For purposes of proving negligent misrepresentation, evidence that a statement was made in the course of the defendant's business, profession, or employment is sufficient to prove the defendant's pecuniary interest in making the statement, even if the

defendant received no consideration for it. *AMA Mgmt. Corp. v. Strasburger,* 309 S.C. 213, 223, 420 S.E.2d 868, 874 (Ct.App. 1992).

■ Appellants' negligent misrepresentation claim fails because they have failed to prove reliance on the 1993 appraisal. It is undisputed that the parties agreed to a contract price without seeing an appraisal. Additionally, Atlantic was employed by and acting as an agent for Bank; thus, it had no independent duty to Appellants. Furthermore, we do not read Bank's commitment letter written before the appraisal was made as anything other than a promise to finance up to $160,000. Had the property been appraised at a value of $80,000 in 1993, then bank was committed to loaning no more than 80% of the market value, or $64,000.

Moreover, there is no evidence that the subject property was worth less than $200,000 in 1993. At that time, the property was in good repair and fully occupied. Unfortunately, the property did not retain its value. Bamberg testified that the property appeared to be in a very different state of repair and occupancy in 1998. We find no evidence in the record to refute this testimony and thus find no evidence of negligent misrepresentation.

### D. South Carolina's Unfair Trade Practices Act

■ Under South Carolina's Unfair Trade Practices Act (UTPA),[1] unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are deemed unlawful. S.C.Code Ann. § 39–5–20 (1985). A plaintiff bringing a private cause of action under the UTPA must allege and prove the defendant's actions adversely affected the public interest. *Daisy Outdoor Adver. Co. v. Abbott,* 322 S.C. 489, 493, 473 S.E.2d 47, 49 (1996). "Therefore, conduct which only affects the parties to the transaction provides no basis for a UTPA claim." *Jefferies v. Phillips,* 316 S.C. 523, 527, 451 S.E.2d 21, 23 (Ct.App.1994).

■ The trial judge found that "there is no evidence of an act or practice that is unfair or one that affects the public interest." We agree. Bank loans money based on the appraised value of the secured property. In its commitment

1. S.C.Code Ann. §§ 39–5–10 through –350 (1985 & Supp.2001).

letter, Bank limited the promised loan amount to Appellants as "not to exceed $160,000 or 80% of the appraised value, whichever is less." Bank then had the property appraised for its own benefit. Had the property been appraised for less than $200,000, Bank would have adjusted the loan amount accordingly. We find nothing in the record, other than Appellants' unproven allegations and inferences of impropriety and coincidences, to suggest that Bank deliberately set out to loan Appellants $160,000 secured by insufficient collateral. Additionally, we can think of no logical reason why Bank would make it a practice to intentionally make loans for an amount in excess of the collateral's value and risk substantial losses in the event of default. Therefore, summary judgment on this issue was proper.[2]

### III. Supplementing the Record

Finally, Appellants argue they should be able to supplement the record with the opinion of their expert, Fred J. Attaway, Jr., regarding the propriety of the 1993 appraisal. They claim his opinion would prove "that fraud is in the appraisal itself" and present an issue of fact warranting the continuation of this action beyond summary judgment. We disagree.

Our rules of civil procedure required Appellants to present admissible evidence to the trial judge in the form of affidavits or other "pleadings, depositions, answers to interrogatories, and admissions on file." Rule 56(c), SCRCP. "Affidavits are the principal means of bringing information before the court in a motion for summary judgment." James F. Flanagan, *South Carolina Civil Procedure* 454 (2nd ed.1996). Such "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Rule 56(e), SCRCP. Moreover, the party opposing the motion for

---

2. Appellants also assert that Bank failed to follow its own procedures established for its loan transactions. For example, Appellants state that Bank committed to a loan before having an appraisal of the property done and that Bank apparently never collected the 1993 appraisal fee from Appellants. Nonetheless, even if such violations did occur, we fail to see how they assist Appellants' position. These alleged violations would only cause harm to Bank, for it could find itself potentially obligated on a loan it would not otherwise make.

summary judgment "may serve opposing affidavits not later than two days before the hearing." *Id.*

Here, Attaway's opinion was in the form of a three page unsigned statement dated July 26, 1999. To be admissible, Attaway's opinion should have been signed and submitted at least two days before the hearing. Attaway's "Appraisal Review" failed to conform in both respects and thus was properly excluded.

Moreover, after reviewing Attaway's "Appraisal Review" we are unable to discern if he is familiar with the 1993 appraisal or if he applied or is familiar with the Standards of Professional Appraisal Practice. *See Englert, Inc. v. Netherlands Ins. Co.,* 315 S.C. 300, 303, 433 S.E.2d 871, 873 (Ct.App.1993) (finding affidavit inadmissible because it failed to assert that the affiant knew or believed the materials were defective, or assert the basis for any such belief or knowledge). The only indication of Attaway's expertise is in the suffixes "MAI" and "SRA" following his name and identifying him as the reviewer of the prior appraisal.

## CONCLUSION

For the foregoing reasons, the final order of the trial judge is

**AFFIRMED.**

GOOLSBY and HOWARD, JJ., concur.