**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA
In The Court of Appeals**

Brent E. Bentrim, Appellant,

v.

Wells Fargo Bank, N.A., Respondent.

Appellate Case No. 2014-002590

———————————

Appeal From Charleston County
Mikell R. Scarborough, Master-in-Equity

———————————

Unpublished Opinion No. 2017-UP-344
Submitted April 3, 2017 – Filed August 9, 2017

———————————

**AFFIRMED**

———————————

Robert Bratton Varnado and Alexis Wimberly McCumber, both of Brown & Varnado, LLC, of Mount Pleasant, for Appellant.

Charles J. Baker, III and John C. Hawk, IV, of Womble Carlyle Sandridge & Rice, LLP, of Charleston; and Shelton Sterling Laney, III, of Womble Carlyle Sandridge & Rice, LLP, of Greenville, for Respondent.

———————————

**PER CURIAM:** Brent E. Bentrim appeals the Master-in-Equity's order granting summary judgment in favor of Respondent Wells Fargo Bank, N.A., the alleged

holder of a negotiable promissory note (Note) Bentrim originally executed in favor of First Union National Bank.  Bentrim argues that Wells Fargo is not the holder or holder in due course of the Note because Wells Fargo is not the identified payee and there is evidence that Wells Fargo's predecessor in interest sold the loan to a third party.  Additionally, Bentrim argues the Master erred in granting summary judgment on multiple causes of action in favor of Wells Fargo.  We affirm.

## FACTS

In September 2000, Bentrim purchased a home at 10 Nicholson Street in Charleston, South Carolina, by obtaining financing from and granting a mortgage to Bank of America.  On May 31, 2001, Bentrim executed and delivered to First Union a Prime Equity Line Agreement and mortgage,[1] allowing First Union to extend Bentrim credit not to exceed $49,000.  Bentrim subsequently refinanced his home through First Union.  On March 12, 2002, Bentrim borrowed $182,700 from First Union and executed a mortgage and Note in favor of First Union in that amount.  Bentrim used the proceeds of the First Union loan to fully satisfy the Bank of America mortgage and partially satisfy the First Union equity line of credit.

Subsequently, First Union merged with Wachovia Bank, N.A.  In November 2006, Wachovia sold the beneficial interest in Bentrim's Note to The Money Store Service Corporation (TMS).  TMS was a subsidiary of The Money Store, LLC, which, in turn, was a subsidiary of Wachovia.

In September 2007, Wachovia initiated a foreclosure action in its own name against Bentrim, asserting it was the holder of Bentrim's Note and it had the right to foreclose.  The 2007 foreclosure was dismissed in December 2007 because Bentrim made payments to bring the loan out of delinquency.  In July 2009, Wachovia initiated another foreclosure action against Bentrim, asserting it was the holder of Bentrim's Note.  During the pendency of the 2009 foreclosure, Wachovia merged with Wells Fargo.[2]  The 2009 foreclosure was also dismissed because an attorney for Wachovia never showed at the hearing.  Bentrim has not made a payment on the loan since 2009.

---

[1] The Prime Equity Line Agreement is a promissory note.  This promissory note is secured by the mortgage executed on the same date.  This is the second mortgage on the subject property.

[2] Bentrim does not dispute that the merger took place and admits Wells Fargo is the successor in interest to Wachovia.

Bentrim brought the present case against Wells Fargo in April 2011, asserting causes of action related to the handling of his loan by Wells Fargo and its predecessors in interest. Wells Fargo counterclaimed for foreclosure and the balance due on the Note. Wells Fargo and Bentrim filed cross-motions for summary judgment. The Master denied Bentrim's summary judgment motion, partially granted summary judgment in favor of Wells Fargo on several of Bentrim's causes of action, and found that Wells Fargo is the holder of the Note. This appeal followed.

1.    We find Wells Fargo is the holder and holder in due course of Bentrim's Note because, by operation of 12 U.S.C. § 215a(e) (2014), Wells Fargo succeeded to First Union's status as holder and holder in due course. The definition of "'[p]erson entitled to enforce' an instrument" in section 36-3-301 of the South Carolina Code (Supp. 2016) includes "the holder of the instrument." The definition of "holder" includes "the person in possession of a negotiable instrument that is payable either to bearer or an identified person that is the person in possession." S.C. Code Ann. § 36-1-201(b)(21)(A) (Supp. 2016).[3] One is a holder in due course if the instrument, when issued, "does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity" and

> the holder took the instrument (i) for value, (ii) in good faith, (iii) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, (iv) without notice that the instrument contains an unauthorized signature or has been altered, (v) without notice of any claim to the instrument described in Section 36-3-306 [of the South Carolina Code (Supp. 2016)], and (vi) without notice that any party has a defense or claim in recoupment described in Section 36-3-305(a) [of the South Carolina Code (Supp. 2016)].

---

[3] The definition of "holder" was revised in 2014 to "conform to the use of the term in the revision of Article 3 that became effective in 2008." *See* S.C. Code Ann. § 36-1-201 (Supp. 2016) (Reporter's Comment on 2014 Revision). The reorganization was for the purpose of clarity. *Id.* (Official Comment). Holder was previously defined as "a person who is in possession of . . . an instrument . . . drawn, issued, or indorsed to him or to his order or to bearer or in blank." S.C. Code Ann. § 36-1-201(20) (2003).

S.C. Code Ann. § 36-3-302(a) (Supp. 2016). Pursuant to 12 U.S.C. § 215a(e), a successor bank in a merger succeeds by operation of law to the predecessor bank's status as owner and holder of a Note. *See* 12 U.S.C. § 215a(e) ("[The] receiving association shall be deemed to be the same corporation as each bank . . . participating in the merger. All rights . . . of the individual merging banks . . . in and to every type of property . . . shall be transferred to . . . the receiving association by virtue of such merger without any . . . other transfer. The receiving association . . . shall hold . . . all rights of property . . . in the same manner and to the same extent as such rights . . . were held . . . by any one of the merging banks . . . at the time of the merger . . . ."); *see, e.g.*, *In re N.C. Deed of Trust*, 719 S.E.2d 207, 210 (N.C. Ct. App. 2011) (holding "Bank of America, as the surviving corporation after the merger, succeeded by operation of law to [the predecessor bank's] status as owner and holder of the [l]oan [d]ocuments").

First Union was the holder of Bentrim's Note because it had possession of the Note and was the identified payee. Further, First Union was the holder in due course of Bentrim's Note. First Union gave value for the Note when it loaned the $182,700 to Bentrim. There is nothing in the record to indicate First Union did not take the Note in good faith. Because the Note had just been issued to First Union, it was not overdue, dishonored, or in default. The original Note does not bear any unauthorized signature and has not been altered. There could not have been any claims to the instrument as listed in section 36-3-306 because First Union took first delivery of the Note. Finally, Bentrim does not assert First Union had notice of any defense or claim in recoupment as described in section 36-3-305(a).

Wachovia, as the surviving bank in the Wachovia-First Union merger, succeeded by operation of law to First Union's status as holder and holder in due course of Bentrim's Note. Similarly, Wells Fargo, as the surviving bank in the subsequent Wells Fargo-Wachovia merger, succeeded by operation of law to Wachovia's status as holder and holder in due course of Bentrim's Note.

2. We find Wachovia's sale of the beneficial interest in Bentrim's loan to TMS had no effect on Wachovia's status as holder and holder in due course, and therefore, the Note was part of the property interests that transferred to Wells Fargo in the merger. *See Wells Fargo Bank v. Ostiguy*, 8 N.Y.S.3d 669, 671 (N.Y. App. Div. 2015) (holding Wells Fargo could enforce the subject note despite the sale of the beneficial interest in the note to Freddie Mac, so long as Wells Fargo could prove the requirements of holder status); *see also Wells Fargo Bank v. Burke*, 34 N.Y.S.3d 865, 873 (N.Y. App. Div. 2016) (finding the sale of a beneficial interest in the subject loan did not divest the loan servicer of holder status because the loan servicer never

gave up possession of the indorsed note and retained custody through the commencement date of its foreclosure action and beyond).

3.      We find the Master properly granted summary judgment to Wells Fargo on Bentrim's various causes of action.

a.      As to Bentrim's cause of action for violation of the South Carolina Consumer Protection Code - Remedies and Penalties based on unconscionability: S.C. Code Ann. § 37-5-102 (2015) (indicating Chapter 5 of the Consumer Protection Code "applies to actions or other proceedings to enforce rights arising from consumer credit sales, consumer leases, *consumer loans*, and consumer rental-purchase agreements" (emphasis added)); S.C. Code Ann. § 37-3-105(1) (2015) (excepting loans "secured by a first lien or equivalent security interest in real estate" from the definition of consumer loan).

b.      As to Bentrim's claims that Wells Fargo and its predecessors in interest engaged in fraud by (1) claiming holder status in the 2007 and 2009 foreclosures, (2) claiming ownership of Bentrim's mortgage, (3) submitting a fraudulent and misleading Lost Note Affidavit, (4) attempting to pass off copies of the Note as the original Note, (5) representing the loan had not been sold, and (6) providing false and misleading account statements: *Sorin Equip. Co. v. The Firm, Inc.*, 323 S.C. 359, 365, 474 S.E.2d 819, 823 (Ct. App. 1996) ("To establish fraud, a party must prove: (1) a representation; (2) its falsity; (3) its materiality; (4) either knowledge of its falsity or reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury."); *id.* at 366, 474 S.E.2d at 823 ("Failure to prove any element of fraud is fatal to the action."); *Foxfire Vill., Inc. v. Black & Veatch, Inc.*, 304 S.C. 366, 374, 404 S.E.2d 912, 917 (Ct. App. 1991) ("Fraud cannot be presumed; it must be proved by clear, cogent, and convincing evidence.").

c.      As to Bentrim's cause of action for slander of title:  *Pond Place Partners, Inc. v. Poole*, 351 S.C. 1, 22–23, 32, 567 S.E.2d 881, 892–93, 897 (Ct. App. 2002) (stating all pleadings, including the filing of a lis pendens, are absolutely privileged and cannot form the basis of an action for slander of title).

d.      As to Bentrim's cause of action for conversion: S.C. Code Ann. § 36-3-420(a)(i) (Supp. 2016) (stating an action for conversion cannot by brought by

the issuer of an instrument); S.C. Code Ann. § 36-3-105(c) (Supp. 2016) (defining an "issuer" as the "maker or drawer of an instrument").

e.       As to Bentrim's independent cause of action for breach of the implied covenant of good faith and fair dealing: *RoTec Servs., Inc. v. Encompass Servs., Inc.*, 359 S.C. 467, 473, 597 S.E.2d 881, 884 (Ct. App. 2004) ("[T]he implied covenant of good faith and fair dealing is not an independent cause of action separate from the claim for breach of contract.").

f.       As to Bentrim's cause of action for civil conspiracy:  *See Pye v. Estate of Fox*, 369 S.C. 555, 566–67, 633 S.E.2d 505, 511 (2006) ("The elements of a civil conspiracy in South Carolina are (1) the combination of two or more people, (2) for the purpose of injuring the plaintiff, (3) which causes special damages."); *AJG Holdings LLC v. Dunn*, 392 S.C. 160, 167–68, 708 S.E.2d 218, 222–23 (Ct. App. 2011) (stating that in order to prove special damages, one must "show that the acts in furtherance of the conspiracy were separate and independent from other wrongful acts alleged in the complaint"), *aff'd*, 410 S.C. 346, 764 S.E.2d 912 (2014); *Vaught v. Waites*, 300 S.C. 201, 209, 387 S.E.2d 91, 95 (Ct. App. 1989) (stating dismissal is appropriate when the civil conspiracy "cause of action 'does no more than incorporate the prior allegations and then allege the existence of a civil conspiracy'" (quoting *Todd v. S.C. Farm Bureau Mut. Ins. Co.*, 276 S.C. 284, 293, 278 S.E.2d 607, 611 (1981))).

g.       As to Bentrim's cause of action for violation of the Fair Debt Collection Practices Act: 15 U.S.C. § 1692(e) (2015) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors . . . ."); 15 U.S.C. § 1692a(6) (2015) (defining a  "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts"); § 1692a(6)(F)(ii) ("The term does not include . . . any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt [that] was originated by such person . . . .").

**AFFIRMED.**[4]

**GEATHERS, MCDONALD, and HILL, JJ., concur.**

---

[4] We decide this case without oral argument pursuant to Rule 215, SCACR.